**Thomas R. PRINCE,
Petitioner-Appellant,**

v.

**STATE OF ALABAMA,
Respondent-Appellee.**

No. 73–3108.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1975.

Rehearing and Rehearing En Banc
Denied March 13, 1975.

Robert R. Bryan, Birmingham, Ala. (Court-appointed), for petitioner-appellant.

William J. Baxley, Atty.Gen., Don C. Dickert, Joseph G. L. Marston, III, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellee.

Before GODBOLD, SIMPSON and IN-GRAHAM, Circuit Judges.

SIMPSON, Circuit Judge:

We review a denial of a habeas corpus petition which alleged that the appellant, Thomas R. Prince, was not afforded his Sixth and Fourteenth Amendment right to a speedy trial by virtue of a nine year delay between his indictment in Alabama on two counts of robbery and subsequent trial on those charges. The district court denied the petition on grounds articulated by the Alabama Court of Criminal Appeals, which had similarly denied Prince's appeal for post-conviction relief. The Alabama court found that Prince had not been denied his speedy trial right because: (i) Prince had made no serious demand for a speedy trial; (ii) Prince was not "available" for return to Alabama for trial because of his incarceration in California; and (iii) Prince had thwarted attempts by the State of California to grant his parole by refusing to waive extradition to Alabama. Prince v. State, Ala.Cr. App. 1973, 50 Ala.App. 368, 279 So.2d 539, 542–545.

Our review of the record convinces us that the Alabama court erred as a matter of law in determining that Prince had not effectively demanded a speedy trial and that Prince was not "available" for extradition to Alabama during the period of his incarceration in California. We further find no substantial support in the record for the Alabama court's finding that Prince thwarted California's attempts to grant his parole, with the exception of a single instance of insignificant import. Accordngly, we reverse and remand for the granting of the appropriate relief.

### I. Facts

The State of Alabama acquired an interest in the appellant, Prince, as a result of two robberies both allegedly occurring in Birmingham, Jefferson County, Alabama, on May 7, 1962. In one incident a local A & P food store was robbed of $160 at gunpoint; the robber fired a shot at the store manager as he was leaving the store. A second incident involved the taking of $140, again at gunpoint, from an individual with whom the appellant had been shooting dice. Both the cashier of the A & P store and the disgruntled crapshooter identified Prince as the robber. A Jefferson County, Alabama, grand jury returned indictments on May 10, 1962 charging Prince with the two robberies.

Less than two months later, on June 29, 1962, Prince was arrested in Los Angeles, California, and charged with grand theft and armed robbery. Upon learning of Prince's arrest, Emmet Perry, the State Solicitor for Alabama's 10th Judicial Circuit, having jurisdiction over Jefferson County, lodged a detainer with the Los Angeles Sheriff's Department on July 12, 1962. The letter from Solicitor Perry to the Los Angeles County Sheriff's department read in pertinent part:

> [P]lease let us know the status of the pending charges there and the likelihood of his being returned here. *If he should become available* please ascertain if he will waive extradition, and if so, notify this office and we shall promptly send our agent for him. (Emphasis supplied)

The reply was in kind: "Your Warrant has been filed as a Detainer, . . . and you will further be advised *if and when this subject is available* to your department." (Emphasis supplied). As it developed, Prince did not become "available" for almost nine years.

Prince was convicted on the grand theft and robbery charges in Los Angeles Superior Court and received on December 11, 1962, concurrent sentences of six months to ten years and five years to life. Prince was then transferred to the custody of the California Department of Corrections (CDC) Reception-Guidance Center at Chino, California. At this time, CDC wrote to the Sheriff of Jefferson County, Alabama, and inquired about the existence of any detainers against Prince. In reply, Solicitor Perry informed the CDC of the outstanding in-

dictments against Prince, and requested that CDC "[p]lease advise the approximate release date . . .. This office will extradite at our expense." The CDC answered: "You will be given the usual sixty (60) days' notice prior to his release from the Department of Corrections."

It appears that Prince was transferred to the CDC Medical Facility at Vacaville, California. The Solicitor of Jefferson County was advised of Prince's transfer on February 27, 1963. He remained at Vacaville until June 1967. In April 1964, CDC—Vacaville notified Solicitor Perry that Prince would be appearing before the Adult Authority for parole and sentence consideration in June 1964, and sought a response as to Alabama's intentions with regard to Prince at that time. The Solicitor's reply was: "It is our intention to take custody of subject when he is released by you." Similar exchanges between CDC and the Solicitor's office in Birmingham are reflected annually through 1967. Each letter from the Solicitor's office to CDC iterated Alabama's intention to return Prince for trial on the pending charges "when available." The only indication in the record as to the outcome of Prince's appearances before the Adult Authority is contained in a letter from CDC to Earl C. Morgan, Perry's successor in office as Solicitor for the 10th Judicial Circuit of Alabama, in which the CDC stated that Prince was denied parole at his April 1966 hearing before the Adult Authority.

In the meantime, Prince had communicated with the Solicitor's office on his own behalf. His letters were essentially requests that Alabama withdraw its detainer or dismiss its charges against him to aid in his receiving the most favorable treatment and training programs offered by CDC. In his first letter, dated October 28, 1963, Prince stated his concern as follows:

I am endeavering to take advantage of the excellent Mental Health Program in the State of California. This state has facilities for out patient Psycho Therapy for parolee's to attend

under close supervision of Psychiatrists in cordination with the supervision by the California Parole Department.

I do not except to be released at a early date, but if your County drops there hold I will be eligible for the future continuous, Mental Health Program. Then on completion, I would become eligible to be paroled out to a Out Patient Clinic, in this State, under there guidance and there full responsibility.

This a long range program of many years, but with your cooperation and consideration I will be well on the road to a complete recovery and able to be a better citizen to society.

This request will be deeply appreciated and relieve my many worries for the future.

The record does not indicate that Prince received any reply from the Solicitor's office in response to this communication. In October 1965, Prince again wrote requesting that charges be dropped and furnished as a basis for his request his belief that he had been rehabilitated by his experience under the care of the CDC. Again Prince apparently received no response from the Solicitor's office for pencilled in on the bottom of Prince's letter from the Solicitor's file is the notation "No necessity for a reply." Following the notation are the initials "B.H.", the record containing no clue to the identity of "B.H." Prince wrote a third letter to the Solicitor's office in November 1966, again asking that the detainers be withdrawn and stating that their pendency was having an adverse impact on his consideration for parole programs in California. This time, he received the following response from Solicitor Morgan: "[T]his is to advise that disposition of the cases pending against you cannot be made until you are returned to this jurisdiction." This exchange ended Prince's attempts to deal directly with the Solicitor's office in Birmingham so far as the record discloses.

On June 12, 1967 Prince was transferred from the Medical Center at Vacaville

to the CDC facility at San Quentin Prison. Prince turned at about this time toward use of the judicial process to have the Alabama charges dismissed. He sought the assistance of nearly a dozen attorneys or organizations, such as the NAACP, in his efforts. He received, with one exception—assistance from a law student at Hastings College of Law in San Francisco—little more than helpful advice and polite "No-thank-yous."

On his own behalf and with the assistance of the Hastings law student acting under the tutelage of a licensed attorney Prince filed a petition for writ of habeas corpus in the Superior Court for Marin County, California, seeking to have the Alabama detainer declared unenforceable in the courts of California on grounds that Alabama had denied him his right to a speedy trial. The petition was denied and Prince appealed to the California First District Court of Appeal. While this appeal was pending, Prince also filed a Petition for Writ of Habeas Corpus with the United States District Court for the Northern District of California. The federal court dismissed the petition without prejudice to its renewal when state remedies had been exhausted. Thereafter, Prince's appeal was decided adversely by the state District Court of Appeal, and Prince sought review by the California Supreme Court. When his petition was there denied, he returned to federal district court to seek habeas relief. His petition to that court was pending at the time of his release to Alabama officials in February, 1971.

During the period after his transfer to San Quentin, Prince had also sought relief from the courts of Alabama and from the Governor of that state. In July 1968 Prince forwarded to the Solicitor in Jefferson County a *pro se* "Motion to Set Aside the Information or to Dismiss the Information." Grounds alleged in support of his motion were the denial of his right to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution. Prince intended perhaps for the Solicitor to file the Motion in the Tenth Judicial Circuit Court on his behalf, but the record does not indicate that the papers were ever filed with the court. Subsequently, Prince petitioned the Alabama Supreme Court to grant his motion. His papers filed in federal district court in California indicate that this Motion was denied by the Alabama Supreme Court.

In May 1969, Prince wrote to the Governor of Alabama seeking his assistance in having the robbery charges dismissed. He explained the circumstances leading to the issuance of the indictment in Alabama, the progress he had made toward rehabilitation in the custody of the CDC, the lack of response from the Alabama state courts to his motions, and his hopes for parole in California. His letter was forwarded to the Solicitor in Jefferson County by a member of the Governor's staff with the notation:

> I am enclosing a letter from one of your constituents who is having a little difficulty at the present time. This man is obviously not guilty because he says so in his letter. Thought you might get a kick out of it.

The Governor's office never responded directly to Prince.

Having thus far failed in his attempts to have the Alabama charges pending against him dismissed, Prince made his annual appearance before the Adult Authority in California for consideration for parole or sentence adjustment in 1970. At that time, Prince was granted parole "to go to hold," meaning that he would be paroled subject to the right of Alabama authorities to take custody of him. The State of California, under this type of parole, retained the power to order Prince's return to CDC upon (i) Alabama's failure to take custody or (ii) his release by Alabama authorities. In October 1970, Prince executed a waiver of extradition form, and preparations were made for his return to Alabama. However it appears that in December 1970 Prince rescinded his consent to accept parole "to go to hold," and his case was recalendared for further consideration by the Adult Authority. Upon reconsideration, the Authority granted Prince's request that he be paroled "subject to hold," meaning that he would be paroled

subject to the right of Alabama authorities to take custody under their detainer, but that the State of California would not retain the right to return Prince to custody of the CDC except, we assume, for violations of the conditions of parole including conviction for a separate offense. Again Prince waived extradition, and Alabama authorities took custody of him upon his release on February 22, 1971. Here began the second leg of the procedural odyssey which has brought Prince once again before this court.[1]

Upon his return to Alabama, Prince filed a Motion to Dismiss the Indictment and a Petition for Writ of Habeas Corpus in the Circuit Court for Jefferson County, both based on denial of his right to a speedy trial. An evidentiary hearing on the Motion was held before Judge Elias C. Watson of that court on September 8, 1971. After taking considerable testimony and receiving numerous exhibits, the Judge denied the Motion and Petition. Prince then sought habeas in the United States District Court for the Northern District of Alabama, where relief was withheld on the ground that Prince had not been denied his speedy trial right. On appeal, we affirmed on jurisdictional grounds, holding that the district court lacked jurisdiction to entertain Prince's Petition under Title 28 U.S.C. Sec. 2254(a) since Prince was at that time not in custody "pursuant to the judgment of a State court." Prince v. Bailey, 5 Cir. 1972, 464 F.2d 544.

Prince was finally tried by the State of Alabama on the robbery charges in March of 1972. He was convicted and received a twenty year sentence. Speedy trial grounds were a part of the basis for his ensuing appeal to the Alabama Court of Criminal Appeals. While his appeal was pending, he returned to federal district court with another habeas corpus petition. This petition also was denied, and we affirmed on jurisdictional grounds, ruling that under Title 28 U.S.C. Sec. 2254(b) & (c) federal courts

should not accept jurisdiction until Prince had exhausted his available state remedies. Prince v. Alabama, 5 Cir. 1973, 476 F.2d 298.

On March 27, 1973, the Alabama Court of Criminal Appeals issued its decision affirming Prince's conviction and holding that Prince had not been denied his Sixth and Fourteenth Amendment rights to speedy trial by virtue of the delay in being brought to trial in Alabama. Prince v. State, Ala.Cr.App.1973, 50 Ala. App. 368, 279 So.2d 539.

We detail the basis for its decision regarding the speedy trial claim because of the reliance by the federal district court upon the Court of Criminal Appeals decision in denying Prince's habeas corpus petition. The Alabama appellate court, found:

On July 9, 1968, appellant sent to the district attorney in Birmingham, to be filed in the Circuit Court, a request for trial upon the charges presently pending against him. This request was never filed nor answered. During this period of time, appellant was eligible for parole in California, and had appeared before the parole board beginning in 1964. However, appellant would not accept the condition of the parole, i. e., releasing him to the State of Alabama for trial, but refused extradition until 1971. Appellant also during this period refused to waive extradition, and as a consequence remained in confinement until his actual parole release date to Alabama.

The State of Alabama, beginning July 12, 1962, requested, of California, the appellant for trial, and on this date filed detainers against him. Continuously from July 12, 1962, until February 1, 1971, the State of Alabama informed California that when appellant was available, Alabama desired to return appellant to this State for trial.

1. See Prince v. Alabama, 5 Cir. 1973, 476 F.2d 298, and Prince v. Bailey, 5 Cir. 1972, 464 F.2d 544. Jurisdictional grounds prevented

consideration by this court of the merits of Prince's claim to relief on those prior occasions, as the text, infra, relates.

The State of California never notified Alabama that appellant would be available or released, until he was paroled on February 22, 1971.[4] The Chief Executive for the State of Alabama issued a requisition warrant to the State of California upon which the Governor of California issued a rendition warrant and released the appellant to Alabama for trial. (Footnotes 1–3 omitted)

\* \* \* \* \* \*

(4. Apparently, due to appellant's refusal of extradition, California elected to require appellant to complete his sentence before releasing him to Alabama. Clearly, the appellant could not both demand trial in Alabama on the one hand, and refuse to appear on the other. \* \* \*).

279 So.2d at 540–541. The Court of Criminal Appeals then turned to a discussion of the relevant cases. After quoting at length from Dickey v. Florida, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26, and Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the court concluded:

[W]e find that from the period from 1962 until the mailing of his "demand" to the district attorney in Birmingham in 1968, the appellant's efforts were largely frivolous, being in the nature of the letters seeking dismissal of the charges rather than a good faith demand of trial to vindicate his position. Also equally sufficient is the fact that from 1962 through 1971, the State of Alabama had made some thirteen separate requests of California, seeking information as to the early release of the appellant to the State of Alabama for trial. \* \* \* Because of these circumstances, we are of the opinion that the State of Alabama secured the presence of the appellant as soon as it

could because the State of California at no time had indicated that the appellant would be made available for trial in Alabama prior to releasing the appellant in 1971.

\* \* \* \* \* \*

In light of these authorities, it is clear that the State of Alabama, under the facts presented by the record on appeal in this case, had no opportunity to exercise its jurisdiction over the appellant for the offense charged until his return to the State of Alabama in 1971; therefore, the trial court correctly denied appellant's motion for a speedy trial dealing with the period of incarceration in California prior to his return to the State of Alabama. (citations and footnotes omitted). 279 So.2d at 544 & 545.

Thus at long last having exhausted his available state remedies, Prince returned to the federal district court seeking habeas corpus relief. The court again denied the petition on the merits, stating:

This court finds itself in agreement with the Alabama Court of Criminal Appeals that in spite of the long delay in bringing the petitioner to trial, the Alabama Courts have *properly* applied the criteria established by the decision of the Supreme Court in Barker v. Wingo, [citation omitted] in deciding that petitioner had not been unconstitutionally denied his right to a speedy trial.

This appeal followed.

## II. The Speedy Trial Right

 The right of criminal defendants to a speedy trial though of long standing,[2] has only recently received jurisprudential emphasis in Anglo-American courts.[3] The Sixth Amendment right is

2. See, Note, The Lagging Right to a Speedy Trial, 51 Va.L.Rev. 1587 (1965) (hereinafter cited as Lagging Right).

3. The historical origins of the right have been adequately discussed elsewhere and require no restatement here. See, e. g., Klopfer v. North Carolina, 1967, 386 U.S. 213, 223–226, 87 S.Ct. 988, 993–995, 18 L.Ed.2d 1, 8–9; Petition of Provoo, D.Md.1955, 17 F.R.D. 183,

196–197; Lagging Right, supra, note 2, at 1594.

For general discussions of the right, see J. Godbold, Speedy Trial—Major Surgery for a National Ill, 24 Ala.L.Rev. 265 (1972); Note, The Right to a Speedy Trial, 20 Stan.L.Rev. 476 (1968) (hereafter cited as Note, Speedy Trial); Lagging Right, supra, note 2.

among those fundamental constitutional rights made applicable to the States through the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. The protections afforded by the right are, moreover, not diminished because a criminal defendant may be incarcerated under a lawfully imposed sentence outside the jurisdiction seeking to prosecute him. Smith v. Hooey, 1969, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607; May v. Georgia, 5 Cir. 1969, 409 F.2d 203.[4] The Supreme Court has held that a State is required, through the use of writs of extradition, writs of habeas corpus *ad prosequendum,* or whatever other means may be available, to make a "diligent, good-faith effort" to secure a convict incarcerated out of state for a prompt trial on pending charges. Smith v. Hooey, supra, 393 U.S. at 383, 89 S.Ct. at 579, 21 L.Ed.2d at 614. We have held this requirement to apply retroactively to the States. Hoskins v. Wainwright, 5 Cir. 1973, 485 F.2d 1186 (*Hoskins III*; see note 4, supra).

 The State of Alabama, therefore, was under a constitutionally imposed mandate to afford the appellant here a speedy trial. In deciding whether, as the appellant alleges, Alabama has failed to comply with this mandate, we must undertake a "functional analysis of the right in [this] case." Our analysis is keyed to the four factors outlined by the Supreme Court in Barker v. Wingo, 1972,

407 U.S. 514, 530, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101, 117: the length of delay, the reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant.[5] In evaluating Prince's claim in light of these four factors, we are mindful that:

> [N]one of the four factors . . . [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

Barker v. Wingo, supra, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.[6]

### A. Length of Delay

 The routine approach to computation of delay in speedy trial cases is to consider the length of time elapsed between indictment and trial—fully ten years in the instant case. Two factors require that we pursue a modified approach here, however. First is the fact that Prince was not realistically available to Alabama authorities until after his trial and conviction in California, when

---

**4.** See also Strunk v. United States, 1973, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56; Braden v. 30th Judicial Circuit Court, 1973, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443; Dickey v. Florida, 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26; Hoskins v. Wainwright, 5 Cir. 1971, 440 F.2d 69 (*Hoskins I*), after remand, 1972, 472 F.2d 158 (*Hoskins II*), on rehearing, 1973, 485 F.2d 1186 (*Hoskins III*). For a general discussion of the applicability of the speedy trial right to the convict, see Note, Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, 77 L.J. 767 (1968) hereinafter cited as Effective Guaranty).

**5.** Mr. Justice Powell in Barker v. Wingo essentially restated the approach which other

courts and commentators had recognized as the crucial considerations in adjudicating claimed denials of the speedy trial right. See, e. g., United States v. Auerbach, 5 Cir. 1969, 420 F.2d 921, 924 (per curiam); United States v. Mann, S.D.N.Y.1968, 291 F.Supp. 268; Note, Speedy Trial, supra, note 2, 20 Stan.L. Rev. at 478.

**6.** We held, for example, in *Hoskins III*, supra, that a showing of prejudice would be unnecessary where the findings as to the other three factors coalesced in the defendant's favor. 485 F.2d at 1192. On this approach, see generally The Supreme Court, 1971 Term, 86 Harv.L.Rev. 50, 164–71.

he was committed to the custody of the California Department of Corrections in December 1962. Second is recognition that the delay between Alabama's taking custody of Prince in February 1971 and his trial on the robbery charges in March 1972 was attributable in part to delays occasioned by Prince himself. Without exploring this latter period in detail, we calculate the length of delay for purposes of our inquiry here to have been roughly eight years—from December 1962 to February 1971. This delay, like the 8½ year delay we considered in Hoskins v. Wainwright, (*Hoskins I*) supra, note 4, 440 F.2d 69, 71, was patently "inordinate." It remains to be determined whether it was also "unjustified." Id.

### B. The Defendant's Assertion of His Right

Prior to the decision of the Supreme Court in Barker v. Wingo, supra, the majority rule was that a defendant who failed to make prompt demand for a speedy trial was deemed to have waived that right for the period up to the time of his first demand.[7] This rule, known as the "demand-waiver" rule, was rejected in *Barker*. There, the Court recognized the compatibility of the fundamental nature of the speedy trial right, Klopfer v. North Carolina, supra, and the presumption against waivers of fundamental constitutional rights first enunciated in Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

Accordingly, the Court in *Barker* substituted for the rigid demand-waiver rule a more flexible approach in which the defendant's assertion of his speedy trial right became merely one of the several factors to be considered in determining whether the right had been abridged. While the Court indicated that the absolute failure of the defendant to assert his right would "make it difficult for [him] to prove that he was denied a

.speedy trial," the Court emphasized that the burden was upon the prosecution to show that the failure of the defendant to assert his right was a knowing failure:

> In ruling that a defendant has some responsibility to assert a speedy trial claim, we do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. 407 U.S. at 529, 92 S.Ct. 2191, 33 L.Ed.2d at 116.

In determining whether Prince made an adequate assertion of his speedy trial right, we are further guided by *Barker* and by the Court's subsequent decision in Strunk v. United States, 1973, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56. In *Barker*, the Court noted that a flexible approach to determination whether the defendant had asserted his speedy trial right

> would permit . . . a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116.

In *Strunk*, the Court gave an implicit indication that the focus of the assertion inquiry might properly be directed toward the question whether the prosecution is put "on notice" of the defendant's speedy trial claim. There, the Court said:

> The entire course of events from the time of arrest through the Court of Appeals plainly placed the Government on notice that the speedy trial issue was being preserved by the accused and would be pressed, as indeed it has been. 412 U.S. at 436, 93 S.Ct. at 2262, 37 L.Ed.2d at 59.[8]

---

7. See Barker v. Wingo, 407 U.S. at 524–528, 92 S.Ct. at 2188–2189, 33 L.Ed.2d at 113–115; Bruce v. United States, 5 Cir. 1965, 351 F.2d 318, cert. denied 384 U.S. 921, 86 S.Ct. 1370,

16 L.Ed.2d 441. But see Murray v. Wainwright, 5 Cir. 1971, 450 F.2d 465, 469.

8. In *Strunk*, the defendant had indicated to Federal Bureau of Investigation agents that

■ We interpret these rulings as an indication that the courts should take a liberal view of convict-defendants' attempts to contact the prosecutors and courts in other jurisdictions regarding charges pending against them there.[9] Such an approach would be consistent both with the concept that chargeable failure to assert a constitutional right must be both knowing and intelligent, Johnson v. Zerbst, supra, and with the realities of a defendant's incarceration, often distant from the prosecuting state and without the effective assistance of counsel.

■ Here Prince first raised the speedy trial issue in those terms with Alabama officials in July 1968 when he mailed his motion to dismiss the charges, based upon the asserted denial of his speedy trial right, to the Solicitor in Jefferson County. This motion, which Prince apparently intended be filed with the circuit court, certainly placed the prosecution on notice that Prince was preserving his speedy trial claim. Strunk v. United States, supra. The fact that the notice arrived in the form of a motion to dismiss is of no consequence. Prince effectively asserted his speedy trial right at least as early as July 1968.

We are not convinced, moreover, that Alabama authorities were not placed on notice that Prince wanted speedy disposition of pending charges as early as October 1963. At that time Prince asserted that the outstanding charges against him would adversely affect his eligibility for rehabilitation programs under the Cali-

---

he intended to assert his speedy trial right by moving for trial under F.R.Crim.P. Rule 20. In anticipation of this motion, it appears that the prosecution delayed initiation of any action against the defendant for a period of several months. The Court of Appeals ruled that the defendant had been denied his right to a speedy trial due to the delay and ordered that the defendant be credited with time served during the delay toward fulfillment of his sentence. The defendant appealed and argued that the remedy should have been dismissal, not merely credit for time served. The government, however, took no cross-appeal from the Court of Appeals' speedy trial ruling. The speedy trial issue thus was not before the Supreme Court.

9. Consideration of the Supreme Court's discussion in *Barker*, supra, 407 U.S. pages 523–530, 92 S.Ct. 2188–2192, 33 L.Ed.2d 52–57, of its reasons for adopting a balancing test and its consequent rejection of the two prior inflexible approaches, (a) the fixed time period, and (b) the demand-waiver rule, convinces us that it is no longer appropriate, if it ever was, to draw a distinction between requests addressed to the prosecutor and demands made upon the court in determining whether a sufficient assertion of the constitutional right to speedy trial has occurred.

The Supreme Court in *Strunk*, supra, though not dealing with the question directly, implied that demands addressed to prosecuting officials are sufficient to assert the right. Accord, Wylie v. Wainwright, S.D.Fla.1973, 361 F.Supp. 914, 916.

In our view it now suffices to assert the right either to court or to prosecution, and we find no reason to adopt a rigid rule as to the form of the demand to be made. Rele-

vant factors to be considered in determining the sufficiency of the accused's attempts to assert his speedy trial right should include whether he had the assistance of counsel and whether he was properly advised, by counsel or otherwise. Barker v. Wingo, supra, 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116. Consideration of these factors differentiates the approach followed by the Second Circuit in United States v. Lustman, 2 Cir. 1958, 258 F.2d 475, cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109, where the accused was on bond and assisted by counsel during the period of delay, and the approach taken by the Ninth Circuit in Chauncey v. Second Judicial District Court, 9 Cir. 1973, 474 F.2d 1238, 1239, where the accused had no counsel and was incorrectly advised by Arizona prison authorities as to the county in Nevada where charges were pending against him.

The record in the instant case gives no indication that Prince received the effective assistance of counsel in his attempts to deal with the Alabama authorities. He was advised by a Berkeley, California, attorney, whose assistance he sought unsuccessfully, that he should attempt to have the Alabama charges dismissed rather than attempt to litigate the constitutional issue (apparently referring to the speedy trial issue). Prince was incarcerated across the continent from the jurisdiction where the charges were pending and lacked the effective assistance of counsel. This is not to intimate that Prince received no benefit from the Hastings law student who assisted him in the California district court. Rather, we are concerned here with Prince's dealings with Alabama authorities charged with the responsibility for his prosecution.

fornia Department of Corrections and requested that the charges be dropped. He ended his letter by stating: "This request will be deeply appreciated and relieve my many worries for the future."

Prince, prophetically, was complaining of precisely the type of prejudice peculiar to convicts against whom charges are outstanding in another jurisdiction and noted by the Supreme Court in its decision in Smith v. Hooey, supra, 393 U.S. at 378–379, 89 S.Ct. at 577, 21 L.Ed.2d at 611–612.[10] If the speedy trial right is designed, at least in part, to protect certain interests of the accused, and if the accused asserts to the prosecuting authorities that delay in resolution of the charges pending against him is prejudicing those very interests, this may very well in itself be sufficient to put the prosecution on notice that the accused desires a speedy resolution of the charges pending against him. It would seem unduly harsh to require that an unsophisticated accused, proceeding *pro se*, invoke the talismanic phrase "speedy trial" before he can claim to have asserted his right. Especially is this so when the prosecution continues at all times to bear the responsibility for securing a prompt trial.

We conclude, therefore, that Prince effectively notified Alabama authorities, at the earliest by October 1963 and at the latest by July 1968, of his desire for resolution of the charges pending against him. Yet he was not returned to Alabama for trial until February 1971.

### C. Reasons for the Delay

The Alabama Court of Criminal Appeals and the district court below found two basic reasons for the delay in bringing Prince to trial during the period of his incarceration in the California prisons. First, they opined that Prince was not "available" to Alabama authorities until his release by the State of California in 1971. Second, they found that Prince had himself caused postponement of his release from CDC by his failure to accept the conditions of his parole, e. g. extradition to Alabama for trial. The courts further found that Prince had refused to waive extradition to Alabama throughout the period 1964–70.

Regarding Prince's availability to Alabama officials, the Court of Criminal Appeals ruled:

[F]rom 1962 through 1971, the State of Alabama had made some thirteen separate requests of California, seeking information as to the early release of the appellant to the State of Alabama for trial. Each of these indicated that the State of Alabama would forward the necessary extradition papers in the event that the appellant would not waive same, and such extradition would be at the expense of the State of Alabama. * * * [T]he State of California at no time had indicated that the appellant would be made available for trial in Alabama prior to releasing the appellant in 1971.

* * * * * *

[I]t is clear that the State of Alabama . . . had no opportunity to exercise its jurisdiction over the appellant . . . until his return to the State of Alabama in 1971; . . .. 279 So.2d at 544–545.

The Supreme Court in Smith v. Hooey, supra, has made it abundantly clear that the concept of "availability" embodied in the above-quoted portion of the Alabama court's opinion is an erroneous one. Quoting from its previous term's decision in Barber v. Page, 1968, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255, the Court ruled in *Smith*:

"In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.

* * * * * *

**10.** See the discussion of prejudice at note 15 and accompanying text, infra. See also Effective Guaranty, supra, note 4, 77 Yale L.J.

at 767, and Lagging Right, supra, note 2, 51 Va.L.Rev. at 1607.

"By a parity of reasoning we hold today that the Sixth Amendment right to a speedy trial may not be dispensed with so lightly either. Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the . . . court for trial." Id., 393 U.S. at 382–383, 89 S.Ct. at 579, 21 L.Ed.2d at 613–614.

We find no evidence in the record to indicate that the State of Alabama made any such "good-faith" effort to secure Prince's presence for trial prior to the date of his scheduled release from the CDC. The Alabama Court of Criminal Appeals emphasized that the State had written California authorities on thirteen separate occasions during the period of Prince's incarceration there seeking information as to Prince's "availability" for extradition, and that California's response was uniformly: "We will let you know when he is available."

■ This characterization misses the point underscored by the Court in Smith v. Hooey, supra. Under *Smith* and subsequent cases [11] Alabama had a constitutionally imposed duty to take affirmative action to secure Prince's return for trial. Mere inquiries about release and availability are not compliance with this duty. Attempts at extradition [12] or the issuance of a writ of habeas corpus *ad prosequendum* by the Alabama courts would have been in the nature of such affirmative action.[13] The record reveals no such attempts of this nature.

The State argued on appeal that such attempts, if undertaken, would have been futile. Again, under Smith v. Hooey, supra, this is not enough. There, the Court, quoting Judge Aldrich of the First Circuit, noted: " 'the possibility of a refusal is not the equivalent of asking and receiving a rebuff.' " Id. at 382, 89 S.Ct. at 579, 21 L.Ed.2d at 614.

Finally, we find that the Alabama appellate court and the district court were wrong as a matter of law in concluding that Alabama had discharged its constitutional duty to attempt to secure Prince's presence for trial.

■ The second ground relied upon by these courts below as a basis for finding that the delay in procuring Prince for trial was not attributable to the State of Alabama was the finding that Prince had refused during the period of his incarceration to accept parole subject to extradition to Alabama and had refused to waive extradition to Alabama. Our independent examination of the record below discloses only one such instance of refusal, occurring in December 1970. At this time Prince refused to accept parole subject to return to the CDC upon his ultimate release by Alabama authorities. This resulted in a two-month delay in Alabama's gaining custody of Prince. It is clear that Prince's motive in refusing parole at this juncture was not to frustrate his return to Alabama. He sought merely to ensure that he would not have to be returned to the State of California upon disposition of matters in Alabama. In fact, Prince waived extradition to Ala-

---

**11.** See the cases cited in note 4, supra.

**12.** The Alabama Code specifically provides for extradition, at the initiation of the Governor, of individuals located outside the jurisdiction of the Alabama courts. Code of Ala., Title 15, Sec. 70 et seq. (1959). Prince, in fact, wrote a letter to the Governor, and, although he did not request that he be extradited, it is reasonable to expect that some further inquiry into the possible need for extradition might have been forthcoming. There was no follow-up other than forwarding a copy of the letter to the solicitor in Jefferson County, text, supra.

**13.** It will be recalled that Prince's motion to dismiss the information, sent to the Jefferson County solicitor, was never brought to the attention of the Circuit Court in Jefferson County. Nevertheless, Prince filed a similar motion in the Alabama Supreme Court, again claiming denial of the right to a speedy trial. While the record does not disclose precisely the outcome of this motion, which was also titled a "Petition for Writ of Mandamus," for aught that appears it was denied without comment.

bama once the matter of his return to California was resolved to his satisfaction.

 The only possible alternative basis for a conclusion that Prince followed a course of refusal of extradition or parole is a comment made by Prince in a letter sent to an attorney in California whose assistance he sought. The passage from which the comment was taken, as quoted by the Alabama Court of Criminal Appeals, 279 So.2d at 548 n. 10, reads in pertinent part:

> I never been before a judge, where any question of extradition was spoken of. And for that matter I have never signed any papers as to my agreeing upon going back to Alabama. The only times the questions of this nature were spoken to me was at my parole hearing, with the members of the parole board. At that time I made the statement that I would die before I be sent back to Alabama.

In our opinion, this statement does not "fairly support" the Alabama court's finding that: "On each occasion that appellant appeared before the California Parole Board . . . he advised the California authorities that he would not waive extradition to Alabama." 279 So.2d at 544 n.6.

Preliminarily, a reading of the complete letter from which the excerpt quoted above comes reveals Prince's conviction that, as a matter of law, Alabama had lost jurisdiction to try his case. Prince states:

> Alabama was supposed to sentence me and then [sic] turn me back over to the state of california to be sentenced. I should be doing a sentence for Alabama if I had been convicted there with a hold from California.
>
> Alabama had original jurisdiction. Under these laws I have been in prison

more than 5 years; in calif. therefore I believe Alabama has lost jurisdiction to try me or convict me. I would like very much to know what you think.

Viewed in context, Prince's comment that he would die before being returned to Alabama, assuming that the statement indicates unwillingness to return to Alabama,[14] could simply be a statement of his determination to assert his legal right not to be returned to Alabama for trial. This ambiguity robs the statement of whatever slender probative value it may have had.

 In addition, the State had the burden of showing that Prince had, by his actions, actually frustrated his return to Alabama for trial. Mere citation of this comment from Prince's letter, without more, is clearly insufficient to discharge that burden. Accordingly, we rule that the Alabama court's finding that Prince thwarted attempts to secure his return to the State of Alabama is not in fact "fairly supported" by the record, and is entitled to no weight here. Title 28 U.S.C. Sec. 2254(d)(8).

 Our conclusion, then, is that the primary reason for the delay in bringing Prince to trial in Alabama was the failure by Alabama authorities to initiate meaningful efforts to secure this result. We need not speculate as to the possible success of such efforts. State authorities were under a constitutional duty to undertake them. Failure to do so, in the face of Prince's assertion of his speedy trial right, and with the consequent delay in Prince's trial, constituted a deprivation of Prince's right to speedy trial. We so hold.

### D. The Question of Prejudice

 While we are not compelled to consider the question of prejudice by

---

14. It is not at all clear that this is the intent of the statement. Prince may have been expressing his opinion that, because of the delays that he had experienced in obtaining res-olution of matters in Alabama, he would die of old age before he would be returned to Alabama.

reason of our holding in *Hoskins III*, note 4, supra, 485 F.2d 1186, 1192, that prejudice is immaterial where consideration of the other three factors—length of delay, defendant's assertion of his right, and reasons for the delay—coalesce in the defendant's favor, we make the following observations.[15] We begin with the premise that the speedy trial right is designed to protect against two distinct types of prejudice—"prejudice to [the] defendant's defense and prejudice to [the] defendant's person." *Lagging Right*, supra, note 2, at 1593.

■ Prejudice to the defendant's defense goes to the reliability and integrity of the fact finding process.[16] Prince claims that his defense has been impaired due to the lapse of time both in the disappearance or death of key alibi witnesses and in the dimming of the memories of those witnesses who were available at trial. Without reaching the merits of this claim—which was not ruled upon by the State court or the court below—we simply note that, under our prior holding in *Hoskins I*, supra, 440 F.2d 69, 72, where the defendant has established a prima facie case of denial of the speedy trial right, the burden is upon the State to show that the defendant has not been prejudiced by the delay.

■ Prince has a further claim to personal prejudice resulting from the pendency of the Alabama charges against him and the lodging of the detainers with the CDC. Prince had asserted to Jefferson County officials as early as October 1963 that the pendency of the detainer against him was having an adverse effect upon his being considered for the most favorable rehabilitation and parole programs offered by the CDC. Further support for this claim was provided in two letters written to Jefferson County officials by a representative of the "7-Step Foundation," a California organization apparently dedicated to assisting CDC inmates in obtaining and keeping favorable parole and work-release programs. According to the correspondence from "7-Step," Prince had received vocational training as a nurse and had been assured by the State of California that he would be offered a job in one of its mental institutions upon his release from CDC—subject to disposition of the pending Alabama charges. Apparently this opportunity was lost to Prince as a result of Alabama's failure to afford him a speedy trial.

"7-Step" also indicated in its correspondence that Prince's custody status in the CDC was being held at medium security because of the pending detainers and that Prince was therefore ineligible for part-time, work-release programs offered by the CDC. We notice finally the possibility that had Prince been accorded a speedy trial on the Alabama charges, it was at least possible that his sentence might have run in part concurrently with his California sentence. That possibility was forever foreclosed by Alabama's election to postpone prosecution until Prince's release from the CDC.[17]

---

15. On the arguments for and against requiring a showing of prejudice, see generally Note, Speedy Trial, supra, note 3, 20 Stan.L.Rev. at 493–94; Lagging Right, supra, note 2, 51 Va. L.Rev. at 1592. Guided at this juncture by our holding in *Hoskins III*, we are under no obligation to pursue the matter further.

16. One commentator has observed:

 With the exception of the due process clause, no procedural safeguard in the Bill of Rights designed to ensure the reliability of the guilt-determining process other than the right to a speedy trial requires a de-

fendant to show actual prejudice in order to establish a violation of that safeguard. Note, Speedy Trial, supra, note 3, 20 Stan. L.Rev. at 493–94.

17. Perhaps the impact of the delay and its attendant frustration upon Prince is best described in his own words. The following is an excerpt from a letter addressed to the federal district judge in whose court in California Prince was pressing for habeas corpus relief shortly before his release to Alabama authorities:

708

### Conclusion

 To summarize, we find that: (i) the appellant effectively asserted his speedy trial right, at least as early as July 1968; (ii) that an unreasonable period of 2½ years delay followed this assertion before the appellant was taken into custody by Alabama officials; (iii) that the delay is attributable solely to the failure of Alabama officials to make a "diligent, good-faith effort" to secure the appellant's presence for trial prior to his release by California authorities, and (iv) that Prince has been prejudiced by the delay. For these reasons we hold that the appellant was denied his Sixth Amendment right to a speedy trial, enforceable upon Alabama through the Due Process Clause of the Fourteenth Amendment. The remedy must be his release from State custody on the robbery charges on which he is now imprisoned.

Accordingly, the judgment of the district court is reversed, and the case remanded with directions that the writ of habeas corpus issue forthwith directing Prince's discharge from custody.

Reversed and remanded.

---

Dear Sir:

I am writing you because I am very concerned and somewhat disappointed and almost discouraged with the people who enforce the constitution in this country. For eight long years I have been trying to get to trial on the charges that are pending on me in Alabama. I have exhausted all State remedies in the State of Alabama and the State of California. I was recently given a parole (to hold) after eight years in the penitentiary. I cannot make a positive parole plan until you act on this case, I cannot even go on the Work Furlough program, no one wants to give me a job because they cannot know whether I will be sent back to Alabama or remain in California on parole. *I feel that the courts have been playing a game with me for over eight* years and I can't help but feeling that this Federal court is playing the same game. Somehow I am under the impression that the constitution means nothing any more, and if I tell you that I have no bitterness for the way the courts have treated me for the past eight years, I would be lying. I can't help from wondering whether or not the Constitution applies to the "have nots", or if a gun and revolution is really the answer, for the "have nots" to benefit by the law, be recognized as a man, decide their own destiny and cast their own shadow. In my heart I pray that this is not the answer, because I think our country has seen enough blood, but if there is no other way, I too will say "on with the revolution." I have seen poor people, black, white, mexican and all other ethnic groups, run through a court room like clothing run through a washing machine, denied their constitutional rights, and it seems that no one cares, not even the people who enforce the constitution of our land. I pray to God that some Judge will understand that which is *happening today and do something about* the situation. My final prayer is: rule one way or the other, deny me, or give me my constitutional rights.