The defendant was indicted and convicted for robbery (Circuit Court No. 79-00684) and sentenced to ten years' imprisonment. He pled guilty (with the understanding that he could appeal) to a second indictment for robbery (Circuit Court No. 79-00685) and was sentenced to ten years to run concurrent with the sentence previously imposed by the trial jury. The only issue argued on appeal, though others are presented but not argued in brief, is whether the defendant was denied his right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 6 of the Constitution of Alabama of 1901.
The facts are stated in chronological order.
 May, 1969: The defendant is convicted and sentenced to 20 years' imprisonment in the State of Florida. The tentative release date is June 23, 1980.
 January 10, 1975: A robbery detainer is placed on the defendant from Jacksonville, Florida. *Page 276 
The defendant escapes from Hillsboro and the Florida State Prison System.
 April 23, 1975: The defendant is committed to a Florida State Mental Hospital.
 June 21, 1975: The defendant commits three robberies and two kidnappings in Alabama while on escape from Florida.
 July 10, 1975: The District Attorney of Jefferson County receives information that the defendant is in the custody of the U.S. Marshal in Cleveland, Ohio.
 July 29, 1975: Alabama authorities are informed that the defendant has been extradited from Ohio and is in jail in Quincy, Florida, on a charge of escape.
 August 11, 1975: The Jefferson County (Alabama) Grand Jury returns five indictments against the defendant who is an inmate of the Florida State Prison System.
 November 21, 1975: The defendant is adjudged mentally competent to stand trial.
 December 19, 1975: Alabama is informed that the defendant had been transferred to Green Cove Springs, Florida.
 January 7, 1976: An Alabama detainer is filed against the defendant by teletype.
 January 9, 1976: Florida informs Alabama that more than a teletype is necessary to file a detainer and indicates that there are prior trial commitments on the defendant: (1) An escape from Tampa, Florida — detainer filed January 10, 1975; (2) a robbery from Jacksonville, Florida — detainer filed January 10, 1975; and (3) an assault and armed robbery from Nashville, Tennessee — detainer filed January 9, 1976.
 January 21, 1976: The defendant contends that he communicated with the District Attorney of Jefferson County by letter on this date and requested that he be brought to trial on the charges then pending against him in Jefferson County.
 The District Attorney denies that he ever received this letter. He states that the Florida authorities were sent certified copies of the indictment and warrant of arrest on this date in response to Florida's letter of 1-9-76.
 January 27, 1977: The defendant alleges that he mailed a "Demand for a Speedy Trial" to the D.A. The D.A. maintains that this demand was never received.
 According to the defendant, sometime during this month a number of charges are disposed of leaving only Alabama and Tennessee detainers remaining.
 March 24, 1977: The defendant alleges that he made his third demand for a speedy trial. The District Attorney denies that his office received any such demand.
 June, 1977: Extradition to Tennessee is denied by Florida authorities.
 October 6, 1978: The defendant files a petition for writ of habeas corpus in the federal district court.
 October 12, 1978: Order to show cause issued to the State of Alabama by the federal district court. The State responds on November 1, 1978, contending that the defendant has never requested a speedy trial and attaching the affidavit of the Circuit Clerk of Jefferson County stating that a search had been made but no demand found.
 November 7, 1978: The Federal Court orders an additional response from the State which the State files on November 16, 1978.
 January 11, 1979: The Federal Magistrate recommends that the defendant's petition for habeas corpus be taken under submission by the court for a period of 120 days. If the State of Alabama fails to take the necessary action to secure the defendant's presence for trial within the 120-day period, it is recommended that the petition be granted.
 January 11, 1979: The defendant objects to the Report and Recommendation of the U.S. Magistrate.
 April 2, 1979: The Federal Court grants the State an additional 30 days in which to bring the defendant to trial. This extension is allegedly necessitated by the defendant's refusal to sign a "detainer act form". *Page 277 
 April 27, 1979: The defendant is returned to Alabama through the use of the "Uniform Agreement of Detainer Act". [The State alleges that Alabama had become a party to this Act during the litigation of the federal habeas corpus petition. The Alabama Code shows the Uniform Mandatory Disposition of Detainers Act became effective April 27, 1978.]
 May 1, 1979: Counsel is appointed to represent the defendant and the arraignment is held. Trial is set for May 21, 1979, and "passed from time to time until June 6th". (The record shows no objection by the defendant to any continuance.)
 June 5, 1979: The defendant is tried and convicted on June 6 for robbery (Case No. 79-00684).
 June 11, 1979: The defendant pleads guilty to a second robbery charge (Case No. 79-00685).
The Circuit Court denied the defendant's petition for writ of habeas corpus and motion to quash the indictment. The judge found that the State of Alabama had not been negligent in bringing the defendant to trial and that the defendant had not been unduly prejudiced by the delay. The Circuit Court agreed with the Federal District Court in finding that the defendant had failed to establish that he requested a speedy trial in 1977. Both courts found that the first notice the State of Alabama had of the defendant's demand for a speedy trial was in October of 1978, in connection with the defendant's habeas corpus petition in federal court.
The usual factors to be evaluated in determining whether the defendant has been denied his Sixth Amendment right to a speedy trial are clearly stated in Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
Length of Delay: The delay from the defendant's indictment until his trial is three years and ten months. This delay is long enough to be "presumptively prejudicial" and trigger inquiry into the other factors bearing on the alleged denial of a speedy trial. United States v. Palmer, 537 F.2d 1287 (5th Cir. 1976). Since this delay is "patently offensive" we must determine whether it is "unjustified". Prince v. State ofAlabama, 507 F.2d 693, 702 (5th Cir. 1975). However, this delay is not sufficient in and of itself to justify a finding that the guarantee of a speedy trial has been violated. Barker,407 U.S. at 533, 92 S.Ct. at 2193; Jones v. Morris, 590 F.2d 684,686 (7th Cir. 1979); Andrews v. State, 370 So.2d 1070, 1072
(Ala.Cr.App.), cert. denied, 370 So.2d 1075 (Ala. 1979).
Assertion of Right: Despite and contrary to the defendant's contentions, both federal and state courts found that the defendant failed to establish that he had requested a speedy trial in either 1976 or 1977. Both courts found that the first notice the State received was in October of 1978.
The defendant proved that he asserted his right to a speedy trial two years and nine months after he learned of the indictment.
 "[T]he point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing. . . . To the extent that promptness in asserting the right is important, then appellant's silence during the entire pre-indictment period works against him because it suggests that any hardships he suffered were either minimal or caused by other factors."
Palmer, 537 F.2d at 1288.
This principle is applicable to this case.
Reason for Delay: The State contends, and there is no evidence to the contrary, that the District Attorney of Jefferson County had been informed by the authorities in Florida that Alabama would have to "wait its turn" to try the defendant because other states had previously filed detainers against the defendant. At the hearing in the Circuit Court, the Assistant District Attorney stated that, "We relied on the State of Florida to inform us when we could attempt to take custody of him. We are under the belief that he was involved in pending litigation there." *Page 278 
The law was stated in the Report and Recommendation of the U.S. Magistrate:
 "The controlling authorities with regard to a prisoner's right to a speedy trial are: Peyton v. Rowe, 391 U.S. 54 [88 S.Ct. 1549, 20 L.Ed.2d 426] (1968); Braden v. 30th Judicial Circuit, 410 U.S. 484
[93 S.Ct. 1123, 35 L.Ed.2d 443]; Strunk v. U.S., 412 U.S. 434 [93 S.Ct. 2260, 37 L.Ed.2d 56]; Klopfer v. N.C., 386 U.S. 213 [87 S.Ct. 988, 18 L.Ed.2d 1]; May v. Georgia, 409 F.2d 203 (5th Cir. 1969); Beck v. U.S., 442 F.2d 1037; Dickey v. Florida, 398 U.S. 30
[90 S.Ct. 1564, 26 L.Ed.2d 26]; Prince v. Bailey, [State of Alabama], 507 F.2d 693 (5th Cir. 1975); Smith v. Hooey, 393 U.S. 374 [89 S.Ct. 575, 21 L.Ed.2d 607] (1969). In summary, these authorities require state authorities who have filed a detainer against a prisoner in another jurisdiction to make a diligent good faith effort, upon demand, to secure the presence of such defendant for trial." (Emphasis added)
In Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 609
(1969), the United States Supreme Court held that "on demand a State had a duty to make a diligent and good-faith effort to secure the presence of the accused from the custodial jurisdiction and afford him a trial." Dickey v. Florida,398 U.S. 30, 37, 90 S.Ct. 1564, 1568, 26 L.Ed.2d 26.
 "Under Smith and subsequent cases Alabama had a constitutionally imposed duty to take affirmative action to secure Prince's return for trial. Mere inquiries about release and availability are not compliance with this duty. Attempts at extradition or the issuance of a writ of habeas corpus ad prosequendum by the Alabama courts would have been in the nature of such affirmative action."
Prince, 507 F.2d at 705.
Moreover, under Smith, it is not enough that attempts to return the prisoner to the prosecuting state, if undertaken, would have been futile for "`the possibility of a refusal is not the equivalent of asking and receiving a rebuff.'" Smith,393 U.S. at 382, 89 S.Ct. at 579; Prince, 507 F.2d at 705.
It is undisputed that Alabama made no attempt to obtain the defendant's presence for trial other than to ask the Florida authorities to inform Alabama of the defendant's availability. In answer to an Order for Additional Response by the federal court the State responded:
 "The State of Alabama has made no effort to secure the presence of petitioner for trial other than to inform Florida authorities that the State of Alabama intended to take necessary steps to have him returned to Alabama upon his release date in Florida (expected June 23, 1980). In January, 1976, the return of an out-of-state defendant to stand trial in Alabama was predicated upon his release date."
Here it is clear under the findings of both federal and state courts that the State of Alabama did not receive notice that the defendant was demanding a speedy trial or that he was available for trial until October of 1978 when it was called upon to answer the allegations in the defendant's petition for writ of habeas corpus filed in federal court. Within six months the defendant was returned to Alabama and he was tried two months later. While the defendant in his lengthy petition states that he "suspects" the State has acted in "bad faith" there is no evidence or even founded suspicion that the delay was a deliberate attempt by the State to either enhance its own case or prejudice the defense.
It must also be noted that, once the State became aware that the defendant was available and wanted a speedy trial, the process of returning the defendant to Alabama was delayed for thirty days because the defendant refused to sign the necessary papers.
While the delay caused by the State's inaction must be considered and weighed against the State, it is weighed less heavily than deliberate prosecutorial delay. Barker,407 U.S. at 531, 92 S.Ct. at 2182.
Prejudice to the Accused: The defendant alleges that he had been prejudiced by the *Page 279 
delay in that two of his alibi witnesses died. The defendant contended that a Mr. Joseph Richards of Jacksonville, Florida, would testify that the defendant was never in the State of Alabama. Mr. Richards was murdered in 1976. The only other witness was a Mr. Norman Nursey who committed suicide in a Florida state hospital in January of 1979.[1]
The defendant did not show when in 1976 Mr. Richards was allegedly murdered. Consequently, we have no way of knowing whether this witness would have been available even had the defendant been tried as early as January of 1976 — five months after his indictment. Chambliss v. State, 373 So.2d 1185, 1204
(Ala.Cr.App.) cert. denied, 373 So.2d 1211 (Ala. 1979).
There was no evidence, other than the defendant's own testimony, that these alleged witnesses were no longer available or that they, in fact, ever existed. There was absolutely no showing of the particular facts to which they would allegedly testify. See United States v. Mays,549 F.2d 670, 677 (9th Cir. 1977).
Defense counsel stated in argument to the Circuit Court that the defendant had been prejudiced on the insanity issue since the psychiatrists who had recently examined the defendant could not make a determination of the defendant's sanity or insanity in 1975 when the crime was committed. Defense counsel stated that he needed the testimony of "these people who examined him" but did not identify these potential witnesses or make any suggestion that they could not be found after some search had been made. Counsel conceded that the "records" had not been destroyed, apparently referring to the hospital records of the defendant's stay in a Florida state mental hospital in 1975.
While we recognize that the passage of time makes proof of any fact more difficult, this difficulty is "immeasurably enhanced" when the fact in issue is a mental state. Dickey,398 U.S. at 43, 90 S.Ct. at 1571. However, we must again note the particular lack of evidence to support the defendant's allegations.
At trial, the defendant entered a plea of not guilty by reason of insanity. In his opening remarks to the jury defense counsel stated:
 "I think you will also find that John Edwin Corn has pled not guilty by reason of insanity, but you will not hear any evidence regarding sanity or insanity and I ask you not to take that to mean that John Edwin Corn is saying by that plea that I did what I am charged with but I was insane at the time, or crazy at the time, and therefore cannot be guilty. That is not the purpose of that plea. I will not go into that, but you will not hear any evidence whatsoever about that."
This statement was made necessary, according to defense counsel, because the trial court refused to grant the defendant's motion to require the State of Alabama to pay expenses for two out-of-state witnesses, psychiatrists who would present testimony on the defendant's insanity. No mention was made of Alabama Code 1975, Section 12-21-260, authorizing the use of depositions in criminal cases for out-of-state witnesses. The defense did not produce any testimony or evidence at trial.
The heart of the defendant's motion for a speedy trial is that he initially requested a speedy trial almost immediately after receiving notice of the indictment which had been brought against him in Jefferson County and that on two other occasions he repeatedly requested the state authorities to give him a speedy trial. As in the case of Billingsley v. State,367 So.2d 553, 556 (Ala.Cr.App. 1978), cert. denied, 367 So.2d 557 (Ala. 1979), which has a similar factual situation, "[t]here is implicit in the trial court's ruling [on the petitioner's allegation that he had made an early request for a speedy trial] that there was no such request, and we do not find that the trial court was in error in its ruling." *Page 280 
The defendant's major complaints and allegations are substantiated only by his own testimony. Had the defendant been able to submit evidence of his uncorroborated claims, the result of this case might have been different. However, under the present state of the record the defendant's allegations must stand or fall upon his own testimony. The credibility of the defendant is a serious issue in this case and one which we think could better be determined by the Circuit Judge.
Exercising that "delicate judgment based on the circumstances of each case," United States v. Marion, 404 U.S. 307, 325,92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971), we conclude that the findings and rulings of the Circuit Court are supported by the evidence and should not be overturned.
 "In sum, the tepid nature of the government's conduct, the tardiness of appellant's complaint, and the lack of [proven] substantial personal or defense prejudice resulting from the government's negligence convince us that the lengthy delay here, though certainly not inconsiderable, nonetheless did not deny appellant his Sixth-Amendment right to a speedy trial." Palmer, 537 F.2d at 1289.
The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] While the State assumes that Mr. Nursey was in a state mental hospital when he committed suicide, the record only shows that he was in a state hospital.