Bobby D. Prince was charged by indictment with the robbery of Clifford Farley by taking some $3383.00 in currency and in property from his person, and by putting him in fear, etc. Following a jury trial in the Tuscaloosa Circuit Court, he was found guilty of robbery and sentenced to fifteen years and one day in the penitentiary. The evidence presented by the State, which consisted of the testimony of the robbery victim, Clifford Farley, and a written confession found by the trial court to have been voluntarily given by the appellant, was sufficient to sustain his conviction.
 I
The principal and dispositive issue on this appeal is this: Wasthe appellant denied a speedy trial for this offense in violationof his rights under Art. I, Sec. 6 of the Alabama Constitutionand the Sixth Amendment to the United States Constitution? We answer in the affirmative and, therefore, reverse and render the judgment of the trial court.
A chronology of events necessary to an understanding of our present disposition is as follows:
April 2, 1973: Clifford Farley was robbed by appellant and four companions on the roadside of County Road 140 in the Sipsey Swamp area of Tuscaloosa County, Alabama.
April 9, 1973: Appellant was arrested in the State of Florida for an armed robbery offense committed in that state and was incarcerated in the Escambia County Jail, Pensacola, Florida.
April 14, 1973: After being notified by the Florida authorities of their arrest of appellant, the Chief Deputy Sheriff of Tuscaloosa County, Warren Miller, went to Pensacola and interviewed the appellant. Appellant confessed his involvement in the robbery of Clifford Farley in Tuscaloosa, County, Alabama.
April 17, 1973: A warrant for the arrest of the appellant on the charge of robbery was issued out of the Tuscaloosa County Court and a detainer was filed with the Escambia County, Florida, authorities.
June 11, 1973: The Alabama State Board of Pardons and Paroles notified their Tuscaloosa County office that the Florida Parole and Probation Commission had inquired "as to what happened in [the Tuscaloosa County] offense as well as if anyone was injured . . ., [and] what [the Alabama authorities] were planning on doing concerning their detainer against the defendant."
July 3, 1973: The Tuscaloosa County Probation and Parole office supplied the State Board of Pardons and Paroles in Montgomery *Page 1188 
with the pertinent information requested by the Florida Parole and Probation Commission, indicating that the "Tuscaloosa County Sheriff's Office . . . is awaiting notice to return Prince to Tuscaloosa County to stand trial."
July 19, 1973: The Escambia County (Florida) Sheriff notified the Tuscaloosa County Sheriff that appellant's trial for his robbery charge had been set for August 2, 1973.
August 2, 1973: Appellant was convicted in Florida for armed robbery and sentenced to ten years imprisonment.
August 17, 1973: The Escambia County (Florida) Sheriff notified the Tuscaloosa County Sheriff of appellant's August 2, 1973, conviction and his incarceration in the Florida State Prison. The Tuscaloosa County Sheriff was advised to place his detainer with the Division of Corrections in Tallahassee, Florida.
November 9, 1973: The Florida Division of Corrections notified the Tuscaloosa County Sheriff by letter and acknowledge receipt of the warrant and detainer lodged against appellant.
May 15, 1975: Appellant's first "Motion To Discharge Detainer" was filed in the Circuit Court of Tuscaloosa County.
June 17, 1975: The State of Alabama Board of Pardons and Paroles notified their Tuscaloosa office that the Florida Parole and Probation Commission had requested information concerning the plans the authorities in Tuscaloosa had for returning appellant to Alabama for prosecution.
June 23, 1975: The Tuscaloosa County Probation and Parole office supplied the State Board of Pardons and Paroles in Montgomery with the pertinent information requested by the Florida Parole and Probation Commission indicating that:
 "As of this date the District Attorney's Office in Tuscaloosa County is unsure as to their position in this case. There seems to be a problem with some evidence. To this date no indictment has been returned by the Grand Jury.
 "The District Attorney's Office stated they would work on it and would let me know when a decision was made about their prosecuting Prince."
July 29, 1975: Robert F. Prince, a Tuscaloosa attorney, advised appellant's father in Lancaster, Texas by letter that:
 "At your request I checked the courthouse records for any pending charges against your son, Bob Prince. I discovered that there were no pending charges against him either in the nature of a felony or misdemeanor. If there still exists a confusion, please notify my office immediately."
August 13, 1975: Appellant wrote to Robert F. Prince (attorney) in Tuscaloosa and advised him that the Florida Prison records reflected an outstanding detainer lodged against him and that the detainer "prevents any custody reduction or work-release program. . . ."
August 19, 1975: Robert F. Prince (attorney) notified the Florida Division of Corrections that:
 "Please be advised that I have been retained by a Mr. Bobby Prince who is presently incarcerated in Arcadia, Florida. He advises me that there is an outstanding detainer from the State of Alabama, probably from the County of Tuscaloosa, Alabama, which prevents any custody reduction or work release program that he might be eligible for.
 "I have checked the records of the criminal division in Tuscaloosa County, Alabama and was advised that no such detainer existed. If possible, I request that you check your records and advise me whether you have any information concerning this alleged detainer."
September 1, 1975: Appellant wrote to Robert F. Prince (attorney) and requested that he have the "Judge in Tuscaloosa" write to the Florida Parole and Probation Commission and "tell them I do not have a detainer."
October 2, 1975: Attorney Robert F. Prince notified appellant's father by letter that he had rechecked the Tuscaloosa County *Page 1189 
records and that they failed to reflect any pending criminal charges against the appellant, but informed him that "a friend on the police force" advised him that "he (policeman) had seen at one time an outstanding warrant against a Bobby Prince. . . ."
February 24, 1976: Appellant wrote to the Tuscaloosa County Parole and Probation office and requested "the case numbers of any detainers that had been filed with the Department of Offender Rehabilitation."
March 3, 1976: The Tuscaloosa County Parole and Probation Office advised appellant that his robbery case had not been assigned a case number and that a case number would be assigned upon indictment.
May 28, 1976: Appellant was indicted for the robbery of Clifford Farley by the Tuscaloosa County Grand Jury.
June 14, 1976: Appellant's second "Motion To Discharge Detainer" was filed in the Tuscaloosa County Circuit Court.
July 9, 1976: Pursuant to the grant jury indictment, a writ for appellant's arrest was issued by the Circuit Clerk of Tuscaloosa County.
August 19, 1976: Appellant filed in the Tuscaloosa Circuit Court his third motion to dismiss the robbery charge against him for failure to provide a speedy trial.
November 2, 1976: An order for appellant's extradition was issued by the Circuit Court of De Soto County, Florida.
November 19, 1976: The Alabama Board of Pardons and Paroles notified their Tuscaloosa office that the Florida Parole and Probation Commission had requested information as to "what plans the authorities in Tuscaloosa had for returning [appellant] to the State of Alabama. . . ."
December 12, 1976: The Tuscaloosa County Parole and Probation office informed the Alabama Board of Pardons and Paroles that the "D. A's. office is still very unsure of what they plan to do — [appellant] returned to Alabama November 22 [for] trial set week of January 17 to 21."
January 20, 1977: Appellant's motion to dismiss for failure to provide a speedy trial was denied following a hearing thereon. Appellant's trial began.
January 21, 1977: Appellant was convicted of robbery in the Circuit Court of Tuscaloosa County and sentenced to fifteen years and one day.
 II
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1977), the United States Supreme Court delineated a four-pronged balancing test to be applied on an ad hoc basis in all cases in which a speedy trial claim is raised. The four factors to be considered in weighing the conduct of the State and an accused are: (1) the length of the delay, (2) the accused's assertion of his right, (3) the reason for the delay, and (4) prejudice to the accused. Our discussion of the merits of appellant's denial of speedy trial claim will be organized around these suggested factors. In doing so, we are mindful that:
 ". . . [N]one of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." Barker v. Wingo, supra, at 533, 92 S.Ct. at 2193.
1. Length of Delay
The Speedy Trial Clause of the Sixth Amendment has no application until a criminal prosecution has begun, and the protection of the Amendment extends only to those persons who have been "accused" in the course of that prosecution. UnitedStates v. Marion, 404 U.S. 307, 92 S.Ct. 455, *Page 1190 30 L.Ed.2d 468 (1971). Dillingham v. United States, 423 U.S. 64,96 S.Ct. 303, 46 L.Ed.2d 205 (1975), established that arrest constitutes the initiation of a criminal prosecution for the purposes of applying the test of Barker v. Wingo, supra, regardless of whether a formal indictment has been returned. Quoting from United States v. Marion, supra, the Court noted:
 ". . . [I]t is readily understandable that it is either a formal indictment or information or else actual restraints imposed by arrest and holding to answer a criminal charge that engaged the particular protections of the speedy trial provision of the Sixth Amendment.
 `Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge.'" United States v. Dillingham, supra, at 308, 96 S.Ct. at 304. [Emphasis supplied]
In light of these authorities, we hold that the State of Alabama designated the appellant as an "accused" person when it filed a warrant and detainer with the Escambia County, Florida, authorities on April 17, 1973; it was on this date that the appellant's right to a speedy trial attached. This holding finds support in cases decided in other jurisdictions. Dodge v. People,178 Colo. 71, 495 P.2d 213 (1972); Commonwealth v. Hamilton,449 Pa. 297, 297 A.2d 127 (1972); see United States v. Simmons,338 F.2d 804 (2nd Cir. 1964).
Although it might be suggested that, in our computation of the length of delay, we should mark April 17, 1973, as the inception of the speedy trial period since that is the date on which we deem the appellant's right attached, the particular facts in this case cause us to pursue a "modified approach" in our calculation of the delay, as was done in Prince v. Alabama, 507 F.2d 693 (5 Cir. 1975).
Appellant was incarcerated in the Escambia County (Florida) Jail awaiting trial on an armed robbery charge when the warrant and detainer were lodged against him by the Alabama authorities in April of 1973. However, appellant was not "realistically available" to the Alabama authorities until after his trial and conviction in Florida in August of 1973. Prince v. Alabama, supra. Thus, for the purpose of determining whether the appellant was denied his Sixth Amendment right to a speedy trial, we calculate the length of delay to be roughly three and one half years — from August 2, 1973, to appellant's trial date on January 20, 1977. In our judgment, this delay is excessive, particularly in view of the fact that appellant's robbery offense was by no means complex, but was most akin to "an ordinary street crime." Barker v. Wingo, supra. At the very least, the delay is long enough to "trigger" an inquiry into the other Barker
factors.
2. Accused's Assertion of His Right
Although the Supreme Court in Barker emphasized that the absolute failure of the appellant to assert his right would "make it difficult for him to prove that he was denied a speedy trial," the Court noted that "the defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker v. Wingo, supra.
On May 15, 1975, appellant filed his first motion to discharge the detainer in the Circuit Court of Tuscaloosa County. It is evident from the contents of that motion and the subsequent motions filed June 14, 1976, and August 19, 1976, that appellant was seeking to have his detainer removed and the pending charge dismissed pursuant to the provisions of the "Interstate Agreement on Detainers Act";[1] all motions made reference to the Supreme Court cases of Smith v. Hooey,[2] and Dickey v. Florida.[3]
The State argues that these motions do not reflect an assertion of appellant's speedy trial right, but merely a desire to *Page 1191 
get his detainer removed and thus they cannot be construed as a "demand" to be brought to Alabama to stand trial under a Barker
analysis.
 In Prince v. Alabama, supra, we find: ". . . [C]ourts should take a liberal view of convict-defendants' attempts to contact the prosecutors and courts in other jurisdictions regarding charges pending against them there. Such an approach would be consistent both with the concept that chargeable failure to assert a constitutional right must be both knowing and intelligent, Johnson v. Zerbst, supra, and with the realities of a defendant's incarceration, often distant from the prosecuting state and without the effective assistance of counsel." 507 F.2d 703.
At the motion hearing conducted the day of trial, appellant testified that he attended "slow learners' school" in Lancaster, Texas, and could not write. Appellant stated that he paid twenty dollars to a fellow prisoner to write the May 15, 1975, motion and then had the "notary man" stamp it. Appellant testified that his fellow prisoner prepared the handwritten motion "out of a law book." He said he was told "it was a motion for a fast, speedy trial, and they [Alabama authorities] have got a hundred and eighty days to come get you or drop the charge." Also, retained counsel had investigated.
We find that, after looking at these motions and the substantive constitutional issues implicitly raised therein rather than the captions placed on the motions, they were sufficient to place the prosecuting authorities "on notice" of the appellant's speedy trial claim as early as May 15, 1975.Prince v. Alabama, supra; Strunk v. United States, 412 U.S. 434,92 S.Ct. 2260, 37 L.Ed.2d 56 (1973). As was noted in Prince v.Alabama, supra:
 "It would seem unduly harsh to require that an unsophisticated accused, proceeding pro se, invoke the talismanic phrase `speedy trial' before he can claim to have asserted his right. Especially is this so when the prosecution continues at all times to bear the responsibility for securing a prompt trial." 507 F.2d at 704.
3. Reasons for Delay
Even though appellant was incarcerated in Florida, serving time for his armed robbery conviction, the State of Alabama, at least after being sufficiently notified of appellant's claim, had a constitutionally imposed duty to make a diligent, good faith effort to secure appellant's return for trial. Smith v. Hooey,393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Prince v.Alabama, supra.
The Supreme Court of Alabama, in Ex parte Hopson, 352 So.2d 506
(Ala. 1977), brings out the view, consistent with Prince v.Alabama, supra, that the state authorities are under an affirmative duty to secure the presence of the party desired by appropriate legal action.
The appellant contends that the State made no such effort until they initiated extradition proceedings in November of 1976 and that no reasons exist which would justify their failure to take affirmative action to secure him a speedy trial.
Before denying the appellant's motion to dismiss the charges, the trial judge commented that "[W]e have had about eight hundred to one thousand cases pending on the criminal docket and we have done our very dead level best to get these cases up." The only other identifiable reason for the delay in the case at bar is that the State had an "evidence problem" which made them "unsure of their position" toward appellant.
Under the facts of this case, we agree with appellant's contention that these reasons are insufficient to justify the inordinate delay in bringing appellant to trial "since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." Barker v. Wingo, supra,407 U.S. at 531, 92 S.Ct. at 2192.
We note too that there is nothing in the record which indicates that any portion of the delay was attributable to the conduct *Page 1192 
of the appellant or that the Florida authorities in any way frustrated appellant's return to Alabama for trial; in fact, it is apparent from the record that when the request for extradition was finally made there was no difficulty in securing appellant's presence in this State for trial.
4. Prejudiced To The Accused
The fourth factor to be balanced is the prejudice to the appellant that resulted from the delay; however, there is authority which holds that where the other three Barker factors weigh in favor of the accused, "prejudice — either actual or presumed — becomes totally irrelevant." Hoskins v. Wainwright,485 F.2d 1186, 1192 (5th Cir. 1973); see Prince v. Alabama, supra.
In Smith v. Hooey, supra, we find:
 "The historic origins of the Sixth Amendment right to a speedy trial were traced in some detail by the Chief Justice in his opinion for the Court in Klopfer, [Klopfer v. North Carolina], supra, 386 U.S. [213], at 223-226, 87 S.Ct. [988], at 993-995 [18 L.Ed.2d 1], and we need not review that history again here. Suffice it to remember that this constitutional guarantee has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: `[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627. These demands are both aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction." 393 U.S. at 377, 89 S.Ct. at 577.
Appellant has demonstrated that the State in their delay abused the second and third of these interests in the case at bar. The fact that the appellant repeatedly and energetically inquired about the pending charges against him is a strong indication that the outstanding untried charge had a depressive effect on him.Smith v. Hooey, supra.
Although the appellant's assertion that the outstanding detainer prevented his being allowed work release is cited by the State to be a "self-serving statement," this assertion was not contradicted, and, moreover, the reality of this hardship finds support in appellant's correspondences with the Tuscaloosa attorney he retained to inquire about the detainer and in his letter of February 24, 1976, to the Tuscaloosa County Board and Probation office. Prince v. Alabama, supra.
In addition, appellant testified that he was unable to recall the circumstances of the alleged offense in Tuscaloosa County. Although the purported inability of an accused to recall the events of an alleged crime may, in some cases, present only a "bare possibility" of prejudice, see Crawford v. State, Ala.Cr.App., 342 So.2d 450 (1977), where the delay is excessive and inexcusable, as shown here, "prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years." United States v.Mann, D.C., 291 F. Supp. 268, 271.
Weighing all factors together, we conclude that appellant has made a satisfactory showing in accordance with the principles laid down by the Supreme Court in Barker, supra, that he was denied his Sixth Amendment right to a speedy trial. Accordingly, the remedy for such deprivation is to reverse and render the judgment of the trial court. Strunk v. United States,412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).
In accordance with the foregoing discussion, we hereby reverse and render this cause.
REVERSED AND RENDERED.
BOOKOUT and BOWEN, JJ., concur.
HARRIS, P.J., and DeCARLO, J., concur in result.
[1] See 18 U.S.C.App., § 1-8 (1970).
[2] 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).
[3] 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). *Page 1193