LEIGH M. CLARK, Retired Circuit Judge.
Upon the return of a verdict of a jury that defendant was guilty of robbery as charged in an indictment, the court fixed his punishment at imprisonment for ninety-nine years and sentenced him accordingly.
A major insistence of appellant is that the trial court was in error in overruling defendant’s “Motion to Dismiss for Failure to Prosecute” on the asserted ground “That the charge was returned more than six (6) months ago, that the defendant has thereby been denied his right to a Speedy Trial, guaranteed by the Sixth and Fourteenth Amendments and that he has suffered prejudice therefrom.” The motion was filed on October 1, 1979. It was heard on October 19, 1979; the case had been set for trial on October 22, 1979, and the trial was commenced on October 23.
Defendant was the only witness to testify on the hearing of the motion. It is undisputed that the alleged crime occurred on November 29, 1978, that defendant was arrested therefor on March 1, 1979, in Louisville, Kentucky, on a warrant previously issued by the District Court of Morgan County, Alabama. One week later, he was returned to Alabama and placed in the Morgan County Jail. On March 14, 1979, he filed a pro se handwritten “Motion for a Fast and Speedy Trial” in the office of the Clerk of the Circuit Court, but as the case was not then in the Circuit Court the motion was sent on the same day to the office *498 of the Clerk of the District Court, and on March 15 the motion was marked “granted” by a judge of the Morgan County District Court.
It is also without dispute that defendant was promptly given a preliminary hearing and that counsel was appointed for him as an indigent at his request and that the same counsel remained his counsel from the time of the preliminary hearing until the completion of the trial in the Circuit Court. Different counsel has been appointed to represent him on appeal. The transcript does not clearly show, but it seems to follow from what has been stated that at the preliminary hearing he was bound over to await the action of the grand jury, which returned an indictment on May 17, 1979. He was arraigned on September 27, 1979, entered a plea of not guilty, and the case was set for trial on October 22, 1979.
The parties on appeal have been energetic in presenting their respective views as to possible application herein of the principles set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and subsequent cases, including Prince v. State, Ala.Cr.App., 354 So.2d 1186, cert. denied, 354 So.2d 1193 (Ala.1978). We look upon such discussions as purely academic, as in each of such cases there was involved an unusual or unreasonable delay between the time the accused’s “right to a speedy trial attached.” In Barker, supra, it was more than five years, in Prince, supra, it was “roughly three and one half years — from August 2, 1973, to appellant’s trial date on January 20, 1977.”
In the argument between the parties as to whether the right to a speedy trial attached on March 1, 1979, at the time of defendant’s arrest, or on May 17, 1979, when he was indicted, neither party convinces us that such is important.
The parties also seem to disagree as to when the prosecution was placed on notice that defendant desired a speedy trial. This also seems to be an argument that gets us nowhere. It appears that the prosecution was put on notice that defendant desired a speedy trial by his handwritten motion filed on March 14, 1979. This, however, was treated, correctly so, as a request for a speedy preliminary trial, and defendant was given one. No further request, or notice of a desire, that he be given a speedy trial was ever made or given by him.
No contention is made that the time intervening between defendant’s arrest and the indictment was inordinate. Clearly it was not. This is especially true in view of defendant’s request for a speedy preliminary hearing, which he was given. There is nothing to indicate that the time between the indictment and defendant’s arraignment was unusually lengthy or unreasonable. There was nothing to indicate that any indictment found subsequent to the indictment against the defendant was tried before this case was set for trial. There is nothing to negate that each of the three circuit judges had a full load during the time involved and was dispatching cases orderly as well as promptly. At the conclusion of the hearing on the motion complaining of a denial of defendant’s “right to a Speedy Trial,” the trial judge hearing the motion said:
“Well, for the record, this Court, of course, has the cases assigned randomly to each individual Judge, and this case— both of these cases apparently were assigned to this Judge after the indictments were returned. A motion for a speedy trial was filed in the District Court, but this Court is not called upon to take judicial knowledge of the District Court’s records. The defendant has had an attorney since he was brought before the District Court. There has been nothing filed in this Court asking that the case be assigned to another Judge so that it may be more promptly disposed of than it has been. There has been no criminal term of court held by me since this defendant was indicted. In addition there is nothing showing before the Court of any substantial prejudice as a result of any delay or that any witnesses have been lost, and for that reason the motion is denied.”
The trial court could not have rightly ruled otherwise.
*499 When the case was reached for trial on October 23, 1979, at 10:30 A.M., the following occurred:
“MR. POWELL: Judge, the defendant has requested me to make the following motions for the record: First of all, motion for a bill of particulars.
“THE COURT: You want to argue that motion?
“MR. POWELL: No, sir.
“THE COURT: All right, motion is denied.
“MR. POWELL: A motion to suppress the identification of the defendant by the prosecuting witness.
“THE COURT: Motion is denied by reason of the fact it was waived on the arraignment and the plea of not guilty.
“MR. POWELL: A motion to make a separate analysis of all police findings.
“THE COURT: Motion is denied.”
Thereafter in rapid succession defendant’s counsel, at the request of defendant, listed about a dozen more motions, which the court ruled upon. Thereupon a jury was selected and the trial of the case commenced.
Appellant asserts as reversible error the court’s action “in denying appellant’s pre-trial ‘motion to suppress identification,’ and in not conducting an in camera hearing on the procedures employed by law officers in obtaining identification.” It is to be noted that appellant supplements a motion made by defendant “to suppress identification” by now adding that the court did not conduct an in camera hearing. None was requested. When the victim of the robbery testified, and was asked by State’s counsel whether she saw in court one of the men who had robbed her, she replied, “Yes, I do.” Then the following occurred:
“Q. Would you point him out?
“MR. POWELL: We object.
“A. He is sitting right over here.
“THE COURT: Wait just a minute.
“MR. POWELL: We object to any in court identification, Judge.
“THE COURT: Ask the question again, I don’t know if I understand the objection.
“MR. BURROUGH: The last question I asked her I believe, Judge — I previously asked her did the man she saw out there with that shotgun — if he was here in court today, and her response was ‘Yes.’ And my next question was ‘Would you point him out to the ladies and gentlemen of the jury.'
“THE COURT: You object to that question?
“MR. POWELL: Yes, sir.
“THE COURT: Overruled.”
It is to be noted that defendant did not at that time ask for an “in camera” hearing or interrogation of the victim and other witnesses out of the presence of the jury. Without derogating any right of defendant under the circumstances to an in camera hearing before the victim was allowed to testify in the presence of the jury as to her identification of defendant as one of the robbers, defendant should have then requested such a hearing in order to be able to urge now with success that he was wrongfully deprived of it.
The victim of the robbery was positive in her identification of defendant as one of the two men who robbed her during daylight hours of a large sum of money at a store she and her husband had been operating for forty years. Before she saw any pictures of him, she described him to the officers in a way that was correct in general. From pictures shown her by officers, she picked out, without any indication of suggestiveness, a picture of defendant without hesitation and without qualification.
While the witness was testifying on cross-examination, particularly as to her identification of defendant as one of the men who robbed her, the following occurred:
“Q. Had you ever seen this man before?
“A. Yes, sir.
“Q. You know him?
“A. Yes, sir, I had seen him about seven years ago.
“Q. Seven years ago?
“A. Yes, sir.
“Q. Had he been in the store?
*500 “A. Yes, sir.
“Q. And you are telling the jury that you had seen him before and he came down there and robbed you, is that right?
“A. That is right. He held us up seven years ago.
“MR. POWELL: We are going to object to that. We are going to object to that, Judge, and move to exclude it. We move for a mistrial.
“THE COURT: Make your motions one at a time.
“MR. POWELL: We move for a mistrial. That is a prejudicial statement. There is no way in the world the jury can get that out of their minds, violating this defendant’s rights, has nothing to do with this case, and it is irrelevant.
“THE COURT: Ladies and Gentlemen, I am going to instruct you to disregard the remark made by the witness and tell you to put it aside, not to consider it now or in your deliberations or anywise on the issue of guilt or innocence. Do you all feel that you can follow the Court’s instructions and try the case on the remainder of the evidence other than that answer? Is there anybody that feels that he or she cannot? All right. There are no hands up, so I take it then that you all agree you will follow the Court’s instructions, and with that I will deny the motion for a mistrial. Go ahead.”
We do not deem it the fault of defendant’s counsel in probing too deep into the witness’s acquaintance with defendant seven years before. If defendant had been as cautious in warning his counsel against such questions, or in advising him as to his previous crime, as he was in directing him as to several motions he should interpose, it is obvious that there would have been no testimony as to a robbery seven years before. The trial court acted promptly to expunge the particular evidence. Its denial of defendant’s motion for a mistrial was well within its discretion.
After the victim of the robbery had testified, Officer Tallent of the City of Decatur Police Department was called as a witness for the State. During his testimony on direct examination as to some photographs, including one photograph of defendant, the following occurred:
“Q. (By Mr. Burrell): All right. I ask you to examine individually the exhibits that have been marked State’s Exhibits 1 through 4.
“A. All right.
“Q. Have you — what are they as to objects?
“A. They are identification pictures or mug pictures.
“MR. POWELL: Now, — all right. Judge, we are going to move for a mistrial on the ground he just told this jury something about a mug shot, and, of course, people know what that denotes, and it would prejudice this defendant’s rights, and we move for a mistrial at this time.
“THE COURT: Ladies and gentlemen, I am going to strike the remark the officer just made to the question. I will instruct the jury in the strongest possible terms that you will not consider that answer if these pictures come in evidence.
“Can you follow that instruction of the Court, as well as you did the others?
“Is there anybody that thinks you cannot put that out of your mind now hold up your hand and let me see your hand.
“All right. There are no hands up. You can go ahead with your examination.
“Q. (By Mr. Burrell): Are these four photographs?
“A. Yes, they are.”
The characterization of the photographs as mug pictures should have been avoided. Carlisle v. State, Ala.Cr.App., 371 So.2d 975 (1979). In that case, Presiding Judge Harris said at 371 So.2d 978:
“. . . Notwithstanding the result here reached, prosecutors and trial judges are again cautioned that the continued use of mug shots at trial may result in reversal. . . . ”
In his contention for a reversal, appellant argues that the cumulative effect of what the victim of the robbery said as to a robbery of her by defendant seven years *501 before and what was said by Officer Tallent was sufficient to require a mistrial, even though neither was sufficient in itself. However, the cumulative effect of the two items of evidence was not made a basis of any motion for a mistrial. What the trial court would have done if this contention had been made, we do not know. We doubt that the cumulative effect under all the circumstances of the two items was of such a nature as to prevent the eradication of any prejudice to defendant. We have no doubt that the trial court should not be reversed for its ruling on defendant’s second motion for a new trial, by reason of a ground asserted now but not called to the attention of the trial court.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.