396 So.2d 406 (1981)
Esther Brumm LEAVITT
v.
ST. TAMMANY PARISH HOSPITAL and Insurance Company of North America.
No. 13975.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
*407 James J. Gleason, Mandeville, for plaintiff-appellee.
Lawrence J. Centola, Jr., New Orleans, for defendant-appellant.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The issue in this case is whether or not plaintiffs-appellees proved defendant-appellant's negligence by a preponderance of the evidence. Because we find no manifest error, we affirm the judgment in appellees' favor.
Esther Brumm Leavitt, age 57, was admitted into St. Tammy Parish Hospital on February 10, 1975, suffering from severe congestive heart failure and diabetes. Because she was weak and taking several drugs which could affect her mental clarity she was instructed to call for assistance if she needed to get out of the bed. On February 14, 1975, Mrs. Leavitt fell while attempting to get in or out of her bed without assistance. She complained immediately of back pain and an x-ray revealed a slight compression fracture of "L-1," the first lumbar vertebra. She filed suit against the hospital and its insurer, Insurance Company of North America. In her petition she alleged she activated the light indicator button to summon a nurse to help her walk to the bathroom. She stated she waited for at least fifteen minutes and got no response. Because she needed to use the bathroom immediately she proceeded to get out of the bed on her own. The petition further alleged she walked to the bathroom unassisted and slipped when she was returning to her bed. Mrs. Leavitt was discharged from the hospital on March 2, 1975 but her heart condition made it necessary for her to be hospitalized or in a nursing home on and off until her death in December 1975. Mrs. Leavitt died before trial and her heirs were instituted as proper party plaintiffs.
Appellant argues there was insufficient evidence at trial to prove the hospital's negligence. We disagree. The evidence would probably be stronger if Mrs. Leavitt had not died prior to trial. She would have been able to testify as to the facts surrounding the accident, such as how long she waited for assistance, thus shedding light on the hospital's negligence in failing to respond promptly. However, even without her testimony we find there is sufficient evidence in the record to establish the hospital breached the standard of care owed by a hospital to a patient in Mrs. Leavitt's condition.
There is ample evidence in the record indicating Mrs. Leavitt did in fact fall. William McDade, a hospital orderly, testified he happened to walk past Mrs. Leavitt's room and observed her "half on the floor, half on the bed." He stated Mrs. Leavitt appeared to be in "severe pain" as he helped her onto the bed. Offered as an exhibit were nurse's notes which reflected that Mrs. Leavitt had fallen. Dr. Gerald Keller, Mrs. Leavitt's attending physician, testified an x-ray taken the day after the fall revealed a slight compression fracture of the first lumbar vertebra where none had appeared in any prior x-rays. Indeed, there seems to be little question that appellee proved she fell. The hospital, of course, is not liable simply because Mrs. Leavitt fell while a patient there. There must be proof of the hospital's negligence, i. e., a breach of a duty, in order to hold the hospital liable.
*408 Dr. Keller testified Mrs. Leavitt had been given several drugs which would affect her sensorium.[1] This was why she was ordered not to get out of bed without assistance. Her husband, Leaton Leavitt, testified he had visited her the night before the accident and found her to be heavily sedated and disoriented. The evidence indicates Mrs. Leavitt was an obese woman, age 57, suffering from quite debilitating heart trouble and diabetes. Considering her condition and the known effect of the drugs she was taking, the hospital owed a duty to respond promptly to Mrs. Leavitt's calls for help. The record shows the hospital breached this duty by having less than adequate staff on hand and in failing to at least verbally answer the assistance light to inquire what Mrs. Leavitt needed. If the hospital was not adequately staffed to give prompt assistance to patients requiring help in getting out of bed, other measures, such as putting up the bed rails, should have been taken to avoid the risk of such patients injuring themselves when attempting to walk unassisted.
In short, the hospital staff knew Mrs. Leavitt was very ill, knew she was taking drugs that affected her mental condition, knew she was to be helped out of bed, knew (or should have known) her assistance light was on and knew the bathroom was in the hall, quite a distance from her bed. In spite of this knowledge, they failed to take adequate measures to avoid this very foreseeable accident. We find this was a breach of the duty of reasonable care owed to Mrs. Leavitt.
We find no evidence of Mrs. Leavitt being contributorily negligent. The record clearly indicates the woman was very ill and under sedation. Mr. McDade testified there was urine on the floor when he found Mrs. Leavitt attempting to get in or out of her bed. This indicates she was getting out of the bed without help only because she needed to use the bathroom immediately. It would certainly be unfair to say that a sick patient, who asks for help from the hospital staff and is at least temporarily ignored, is contributorily negligent for attempting to walk to the bathroom when the need arises.
Appellant argues that appellees' failure to call a certain witness, Gloria Graham, creates a presumption that Mrs. Graham's testimony would have been unfavorable to appellee. The record indicates Mrs. Graham was present in the hospital room visiting another patient at the time of the accident. Appellant's insurance company obtained a statement from Mrs. Graham shortly after the accident. Appellees requested a copy of the statement but was denied this information because appellant claimed it was a "work product" prepared for litigation and as such was not discoverable under La.Code Civ.P. art. 1424. Appellees then sought to obtain the statement under a subpoena duces tecum. Appellant complied on the day of the trial by providing a dictabelt containing the statement. However, because the parties were not able to locate a machine that would play the dictabelt, the witness was not able to refresh her memory. Appellees, mindful of the passage of five years since the accident, declined to put Mrs. Graham on the stand, believing she would not be able to shed any light on the incident. Considering the circumstances we feel there should be no presumption against appellee for her failure to call the witness. We note that appellant's compliance with the subpoena duces tecum was not as responsive as it could have been. A tape that cannot be played has little value to anyone.
Appellant argues the court erred in awarding $7,500.00 for pain and suffering because there was no expert medical testimony on this issue. It is true Dr. Keller did not testify as to how this fracture affected Mrs. Leavitt. Evidence indicating she suffered after the fall consisted of the testimony of the orderly who said she looked like she was in severe pain, and testimony of her husband, Leaton Leavitt. Mr. Leavitt stated Mrs. Leavitt had never complained of *409 back pain before the fall but complained continuously of discomfort afterwards. He said it was necessary for him to move her body into different positions in the bed to relieve the pain. A neighbor constructed a "donut" device to alleviate the pain when Mrs. Leavitt was sitting or lying down. We find this evidence sufficient to establish that Mrs. Leavitt experienced pain from the back injury.
Appellant is incorrect in asserting that this element of damages must be proven by medical testimony. To the contrary, it is usually the family and friends of the plaintiff who are the most aware of any discomfort experienced. Lay testimony is always admissible to prove that which the witness knows about and is legally capable of testifying. Arthur v. McConnell, 386 So.2d 499 (La.App.2d Cir. 1973); Smith v. Andrepont, 378 So.2d 479 (La.App. 1st Cir. 1979, writ refused 1980).
We find the award of $7,500.00 to be within the discretionary range allowed the trial court.
For the foregoing reasons, we affirm the judgment of the trial court. Appellant is to pay all costs of these proceedings.
AFFIRMED.
NOTES
[1] The sensorium is the part of the brain which receives and interprets sensory stimuli. It is often used to designate the condition of a patient's consciousness or mental clarity.