352 So.2d 506 (1977)
In re LaFrench HOPSON
v.
STATE.
Ex Parte LaFrench Hopson.
SC 2309.
Supreme Court of Alabama.
September 16, 1977.
Rehearing Denied December 9, 1977.
*507 H. Wayne Love, Anniston, for petitioner.
William J. Baxley, Atty. Gen., and Eric A. Bowen, Asst. Atty. Gen., for the State, opposed.
PER CURIAM.
We granted certiorari to review the decision of the Court of Criminal Appeals, 352 So.2d 500 which affirmed petitioner's conviction for second degree murder and sentence of twenty years' imprisonment in the penitentiary. We affirm.
Petitioner contended at his trial that he had been denied his constitutional right to speedy trial. The trial court denied his motion to dismiss the indictment because of deprivation of his right to speedy trial and the Court of Criminal Appeals affirmed the conviction.
Facts, sufficient for our decision, are contained in the Court of Criminal Appeals' opinion.
It is, of course, fundamental that the right to speedy trial is guaranteed under the Sixth Amendment to the United States Constitution.
Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) is the yardstick by which the court determines whether there was a denial of speedy trial. In applying the Barker v. Wingo standards to this case: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right and, (4) prejudice to defendant; we reach the same conclusions as those reached by the majority of the Court of Criminal Appeals.
(1) Here the length of delay from indictment to trial was five years. In Barker, it was five years. In Prince v. Alabama, 507 F.2d 693 (5 Cir. 1975), it was nine years. In Sellers v. Alabama, No. 74-55-5 (M.D.Ala., filed December 4, 1974), it was two years. This delay does not, of itself and in comparison with other cases, appear to be inordinate, particularly in view of the reasons for the delay.
(2) The reasons for the delay are because defendant fled the State of Alabama going to New York State where he committed another homicide. He was convicted and served his sentence there. At first, Alabama had difficulty locating him. Alabama made a "good faith effort" to extradite defendant but was refused by the Governor of New York. No such effort was made in Prince, supra, where the Fifth Circuit Court of Appeals held that attempts at extradition, or issuance of a writ of habeas corpus ad prosequendum would have constituted "good faith efforts." This is in the disjunctive not conjunctive. To reach the result petitioner contends for, we would have to hold that both attempts must be pursued. We know of no Alabama or Supreme Court case so holding. The instant case is more nearly like Sellers than Prince. In Sellers the Governor of Georgia refused extradition. Chief Judge Frank M. Johnson found this to be a significant factor in finding no deprivation of speedy trial. In Prince, no extradition was attempted.
(3) Defendant's assertion of his right was made three years before trial. This is not significantly longer than the two years found in Sellers.
(4) Finally, the prejudice to defendant must be considered. As Judge Johnson wrote in Sellers, "At no point . . . has petitioner made any effort to prove or allege in detail any prejudice resulting from the pretrial delay." In the opinion of the Court of Criminal Appeals, Judge Harris found that petitioner "did not show that he was prejudiced in any manner" either by "murky memories of witnesses" or "witnesses. . . whose addresses had become *508 unknown . . . ." Petitioner fails to challenge this finding as required by Rule 39(k), ARAP. Under our rules of review, we cannot consider whether petitioner's "claim" that denial of parole and denial of access to minimum security facilities (because of the Alabama detainer) constituted "prejudice." There is no finding of fact as to these matters in the opinion. Rule 39(k) states specifically that our review by certiorari of the Courts of Appeal is "limited to the facts stated in the opinion . . ." and that if petitioner is not satisfied with the opinion's statement of the facts, he may ". . . present any additional or corrected statement of facts . . ." etc. Petitioner did not do so.
With reference to our scope of review, even as to the application of the law to the facts, we are limited to the facts as stated in the Court of Appeals' opinion.
"It is well settled under our decisions that on certiorari this court will not enter into a redetermination of facts as found by the Court of Appeals, and such findings are not subject to review by this court. Ex parte Pesnell, 240 Ala. 457, 199 So. 726; Broadway v. Alabama Dry Dock & Shipbuilding Co., 246 Ala. 201, 20 So.2d 41."
State Dept. of Industrial Relations v. Ford, 278 Ala. 352, 178 So.2d 190 (1965) (per Harwood, J.).
"On certiorari this court will ordinarily review the Court of Civil Appeals only on questions of law and not upon the findings of fact, other than as to the application of the law to the facts as found by the Court of Civil Appeals. Russellville Gas Co., Inc. v. Duggar, 288 Ala. 309, 260 So.2d 395."
Union Camp Corporation v. Blackmon, 289 Ala. 635, 270 So.2d 108 (1972) (per Harwood, J.).
"On certiorari, this Court will review the Court of Civil Appeals only on questions of law and not upon the finding of facts or application of the law to the facts except as to the facts as are stated in the Opinion of the Court of Civil Appeals so that a review may be effected without an examination of the record filed in the Court of Civil Appeals. Ex parte Steverson, 211 Ala. 597, 100 So.2d 912; Parham v. State, 217 Ala. 398, 116 So. 418; Tuscaloosa Motor Co., Inc. v. Cockrell, 272 Ala. 387, 132 So.2d 745." Russellville Gas Co. v. Duggar, 288 Ala. 309, 260 So.2d 395 (1972) (per Heflin, C. J.).
Weighing all the factors together, we find no deprivation of the constitutional right to speedy trial in this case. We are cognizant of the extreme remedy for such deprivationdismissal as mandated by Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER and ALMON, JJ., concur.
JONES, SHORES, EMBRY and BEATTY, JJ., dissent.
SHORES, Justice (Dissenting):
The following constitutes a chronology of events as established by the record:
August 28, 1970: LaFrench Huguley was shot to death in his home;
September 8, 1970: A warrant for the arrest of LaFrench Hopson on the charge of first degree murder was issued out of the Calhoun County Court;
September 10, 1970: The District Attorney of Calhoun County requested the issuance of a warrant against the defendant for unlawful flight to avoid prosecution from the U. S. Attorney for the Northern District of Alabama;
February 9, 1971: Hopson was indicted by the grand jury for first degree murder;
August 3, 1971: The District Attorney of Calhoun County inquired of the Sheriff in Buffalo, New York, concerning Hopson's incarceration in the jail there and the possibility of a waiver of extradition by Hopson in order to answer the charge pending against him in Alabama;
August 9, 1971: The District Attorney of Calhoun County was advised by the Sheriff *509 of Erie County, New York, that Hopson was in custody there on a first degree murder charge and that a detainer would be lodged against him on the Alabama charge. The sheriff further advised the Calhoun County District Attorney that, if Hopson were sentenced to another institution in New York, the detainer would be sent to that institution;
October 15, 1971: Hopson was sentenced to eight years in Attica Correctional Facility, New York;
October 19, 1971: The Superintendent of Attica notified the District Attorney of Calhoun County that the Alabama warrant against inmate Hopson had been lodged against him, and that the District Attorney would be notified in a sufficient time prior to his release from Attica to allow the Alabama authorities to take him into custody;
August 20, 1973: Hopson executed and sent, by certified mail, a document demanding a fair and speedy trial to Governor George Wallace and to the Calhoun County Court, Anniston, Alabama. In that document, he stated that he was presently in Attica and appealed "to the authorities of the State of Alabama to come and get him so that he can answer said charges.";
June 18, 1974: The District Attorney requested the Governor of Alabama to apply for extradition of Hopson to the Governor of New York;
June 24, 1974: The Governor of Alabama executed and forwarded a request for extradition to Governor Rockefeller of New York;
July 16, 1974: Governor Rockefeller replied to Governor Wallace's request:
"We are advised that Mr. Hopson has been convicted of manslaughter, first degree, in Erie County, New York, and has been sentenced to the Attica Correctional Facility for 8 years. The date of conditional discharge for Mr. Hopson is April 9, 1976.
"In view of the long delay before subject will be available to answer a fugitive warrant, Governor Wallace's requisition is being returned to you.";
July 26, 1974: Governor Wallace's office notified the District Attorney of Calhoun County that:
"The State of New York has returned our request for extradition of LaFrench Hopson, together with a letter which is self-explanatory.
"You may wish to place a holdover for this fugitive or enter into an Executive Agreement to return the party to Alabama for trial and then return him to New York.
"The request for extradition is being returned to you and should you decide to enter into an Executive Agreement, you may return the papers and we will re-submit them to the Governor of New York for further consideration.";
August 9, 1974: The District Attorney of Calhoun County advised the Governor of New York, by letter to his Assistant Counsel, to ". . . place a hold on LaFrench Hopson who is presently in the Attica Correctional Facility and advise us sixty (60) days prior to his release.";
August 15, 1974: Letter of August 9 was acknowledged and received by the New York Governor's Office, stating that it would be forwarded to ". . . Mr. Eugene Phillips, Supervisor of Inmate Classification and Movement, Department of Correctional Services, State Campus, Albany, New York.";
August 22, 1974: Edward L. Chassin, an attorney, wrote to the Calhoun County Court on behalf of Hopson requesting information on the charges pending against Hopson in Alabama;
September 19, 1974: Stephen J. Perrello, Jr., an attorney, wrote to the same court requesting information about the Alabama charges pending against Hopson;
September 23, 1974: The Clerk of the Circuit Court of Calhoun County responded to the September 19 letter by saying that the indictment had been issued against Hopson for murder in the first degree but that the ". . . defendant not yet taken into sheriff's custody.";
*510 November 12, 1974: The State of New York, Wyoming County Court, ordered the dismissal of the Alabama detainer warrant without prejudice to any subsequent extradition proceedings by Alabama. The judge stated as grounds for the dismissal the long delay resulting from the failure of the Alabama authorities to dispose of the case.
April 9, 1976: Hopson was released from the Attica Correctional Facility. Alabama authorities were not notified by New York authorities prior to his release;
April 24, 1976: Hopson was arrested in Calhoun County, Alabama;
May 28, 1976: Hopson filed a motion to dismiss on the basis of a denial of his right to a speedy trial. Motion was denied after a hearing on the matter;
June 14, 1976: The case was set for trial; and
June 16, 1976: Hopson was tried and convicted of second degree murder.
The right to a speedy trial is a fundamental right under the Constitution. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). It is, however, generically different from other constitutional rights because of its societal importance apart from any general concern with the treatment of accused persons. In recognition of this fact, the Supreme Court of the United States has held that any inquiry into this right necessitates a functional analysis of the speedy trial guarantee in the particular context of each case.
As noted by the majority, the Supreme Court of the United States, in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), set out four factors which courts should consider in determining whether, under the facts of a particular case, a defendant has been deprived of the right: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. The balancing of these factors is a delicate process, requiring a determination of their relative importance in each situation based upon the facts of individual cases. No precise time can be set as being too long in bringing a defendant to trial. While the length of the delay may appear extreme at first glance, it may be sufficiently warranted by the reason for the delay. The delay may be attributable in whole or in part to the defendant's own actions, in which case such actions should be weighed, despite the fact that the state bears the primary burden of bringing the defendant to trial and insuring that the trial itself is consistent with the requirements of due process. Any prejudice to the defendant must be assessed in the light of the interests protected by the right: The prevention of oppressive pretrial incarceration, the minimization of the accused's anxiety and concern, and the limitation of the possibility of impairing the accused's defense. Barker v. Wingo, supra, 407 U.S. at 532, 92 S.Ct. 2182.
As indicated, the indictment was returned against the defendant on February 9, 1971. He was tried in June, 1976, over five years from the date of the charge, and nearly three years from the date he first demanded a trial. Even though the defendant was incarcerated in New York serving time for a felony committed there, the Supreme Court of the United States has said that Alabama has a constitutional duty to make a diligent, good-faith effort to bring him before the Circuit Court of Calhoun County for trial. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).
Did Alabama make that diligent, good-faith effort? When extradition was sought in 1973, Governor Rockefeller's Office returned Governor Wallace's requisition with the comment that it was being returned because of the long delay before Hopson would be released from Attica. In passing this information along to the District Attorney of Calhoun County, Governor Wallace suggested that the District Attorney might want to enter into an executive agreement with the New York authorities in order to obtain Hopson's temporary release for trial on the Alabama charges and then return him to New York for the completion of his sentence there. Governor Wallace offered to seek such an agreement if the District Attorney desired. For reasons not apparent *511 from the record, the District Attorney did not pursue that course. Instead he simply asked the New York Governor's Office to place a "hold" on Hopson and notify him sixty days before Hopson's release, which was scheduled for April 9, 1976, nearly three years later.
Although it is not certain that an executive agreement would have proven successful in obtaining Hopson's release from the New York authorities, the Supreme Court of the United States has held that a state is required to take whatever action may be necessary to attempt to secure the prisoner's release for trial. The Supreme Court has further stated that ". . . `the possibility of a refusal is not the equivalent of asking and receiving a rebuff.' . . ." Barber v. Page, 390 U.S. 719, 724, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). The United States Circuit Court for the Fifth Circuit has been even more explicit. In Prince v. Alabama, 507 F.2d 693, 705 (1975), that court stated:
". . . Alabama had a constitutionally imposed duty to take affirmative action to secure Prince's return for trial. Mere inquiries about release and availability are not compliance with this duty. Attempts at extradition or the issuance of a writ of habeas corpus ad prosequendum by the Alabama courts would have been in the nature of such affirmative action. . . ."
Tested by the federal cases, it is apparent that Alabama has not carried its burden of taking every step available to secure a speedy trial for the petitioner.
There is no contradiction in the record that Hopson asserted his right to a speedy trial as early as 1973. The state argues that Hopson's petition was directed to the wrong court and, as a result, it failed to give the proper authorities notice of his demand. While it is true that the case was pending in the Circuit Court and Hopson's 1973 demand, as well as the two subsequent letters written on his behalf, were all directed to the County Court, this mistake is at least partly due to the fact that the original warrant for Hopson's arrest issued from the Calhoun County Court, giving Hopson reason to believe that the County Court had jurisdiction over his case. In any event, his efforts were sufficient to put the prosecution on notice of his claim, since the Circuit Court received actual notice of his demands by way of the September 19, 1974, letter and the Circuit Court Clerk's reply. This is all that is constitutionally required. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).
It is equally true that his testimony concerning the prejudice he suffered was uncontradicted. Hopson testified that he had been prejudiced by the delay in that (1) he was denied access to minimum security facilities in New York because of the Alabama detainer; and (2) he was denied parole in New York because he had received no rehabilitation as a result of the Alabama detainer. The Supreme Court of the United States has recognized the possibility of distinctive forms of prejudice in cases concerning the speedy trial right of an accused who is incarcerated in another jurisdiction.
"At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from `undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the condition under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him." Smith v. Hooey, supra, 393 U.S. at 378, 89 S.Ct. at 577.
The majority relies on Sellers v. Alabama, No. 74-55-5 (M.D.Ala. filed December 4, 1974), where the trial court found that the *512 defendant had made no effort to show that he had been prejudiced in any way by the delay in trying him. Unlike Sellers, however, we have before us a record which shows without contradiction that the defendant was denied access to minimum security facilities in New York because of the Alabama detainer; he received no rehabilitation as a result of the Alabama detainer and, consequently, was denied parole because he had received no rehabilitation.
The majority says we must ignore this record because the Court of Criminal Appeals found as a fact that the defendant had not been prejudiced by the delay and the defendant failed to challenge this finding by filing a motion under ARAP 39(k). I cannot agree with this treatment of the scope of our review. First, I think the finding of no prejudice made by the Court of Criminal Appeals is a legal conclusion reached by that court. Surely we can review the record to determine whether that court reached the correct legal conclusion on uncontroverted facts. In fact, we have frequently done so.
I think this record shows without contradiction that there was a delay of some five years in bringing the defendant to trial in Alabama; that delay was occasioned in part because he fled the jurisdiction and was subsequently incarcerated in New York. He demanded a speedy trial in Alabama; Alabama took some steps, but not all that were available, to bring him back for trial; and the defendant was prejudiced, as that term is defined by the federal cases, by the delay.
I, therefore, dissent.
JONES, EMBRY and BEATTY, JJ., concur.