378 So.2d 1173 (1979)
Anthony TURNER
v.
STATE.
4 Div. 752.
Court of Criminal Appeals of Alabama.
October 2, 1979.
Rehearing Denied October 30, 1979.
*1174 James R. McKoon, Jr., Phenix City, for appellant.
Charles A. Graddick, Atty. Gen., Sarah Kathryn Farnell, Asst. Atty. Gen., for appellee.
*1175 TYSON, Judge.
Anthony Turner was indicted for assault with intent to murder.[1] The jury found him "guilty as charged" and he was sentenced to twenty years imprisonment by the trial judge. From that judgment and sentence he brings this appeal in forma pauperis.
On February 9, 1979, appellant moved the trial court to quash the indictment against him on the grounds that he had been denied his right to a speedy trial. This motion was argued immediately prior to appellant's robbery trial on February 22, 1979.
Appellant called William Page of the Russell County Sheriff's Department who testified that the sheriff's department had on file documents entitled Agreement on Detainers, forms I through V, but that he did not know the date the sheriff's department had received them. These documents were admitted into evidence without objection as Defense Exhibit No. 1.
Thomas Boswell testified that he was Chief Investigator of the Russell County District Attorney's office and that, as such, he had the responsibility of extraditing inmates from other states for trial. Boswell testified that Russell County authorities had knowledge of appellant's incarceration in Georgia "[w]hen the original case was made in 1977," but did not begin extradition proceedings until May 1978. (Tr. p. 10).
According to Boswell, in May, 1978, he filed extradition papers with Georgia authorities under a governor's side agreement, but in October, 1978, was informed by the State of Georgia that they were no longer honoring this agreement.[2] Georgia authorities advised Boswell to begin proceedings under the Uniform Mandatory Disposition of Detainers Act, §§ 15-9-80 through 88, Code of Alabama 1975, which was done on October 2, 1978.
Forms complying with the Act were completed and returned on October 17, 1978, and appellant was arraigned on February 9, 1979.
Boswell testified on re-direct that the District Attorney's Office had no record of appellant's Request for Disposition received by the sheriff's office in May of 1978.
No other evidence was presented on the motion to quash and the motion was denied March 1, 1979.
At trial, David Reid testified that on September 25, 1976, he was working the 11:00 P.M. to 7:00 A.M., shift at the front desk of a Holiday Inn in Phenix City, Alabama. He stated that on that date, while he and the night auditor were counting the day's receipts shortly after the shift began, appellant and a companion entered the motel, brandished pistols and demanded money. Reid recalled that after appellant had taken the money, he raised his pistol, took aim, and fired. (Tr. p. 27-32.) The bullet struck Reid in the base of the neck. Thereafter, Reid was taken to the hospital and treated.
Approximately two or three weeks later, at a lineup held in Columbus, Georgia, Reid identified appellant as the person who had robbed and shot him.
Dr. Kenneth Goldman testified that he is a surgeon in Columbus, Georgia, and that on September 25, 1976, he treated David Reid for a gunshot wound to the base of the neck. He also testified that a gunshot wound to the base of the neck was potentially fatal.
Appellant did not testify at trial, nor present any evidence in his behalf.

I
Appellant asserts that he was denied a speedy trial for this offense in violation of his rights under Art. I, § 6, of the Alabama Constitution and the Sixth Amendment to the United States Constitution.
A chronology of the events giving rise to this contention is as follows:
*1176 September 25, 1976: David Reid was robbed and shot by appellant at a Holiday Inn in Phenix City, Alabama.
October 23, 1976: Appellant was identified by Reid at a lineup held in Columbus, Georgia.
January 11, 1977: The Russell County Grand Jury returned a true bill charging appellant with the offense of assault with intent to murder.
May 31, 1977 to June 8, 1977: It is obvious from the record that the sheriff of Russell County received Agreement on Detainer Forms I through V sometime during this period. (Tr. p. 4.) Appellant's signature appears on Forms I and II and both are dated May 31, 1977. Form II is labeled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints" and is addressed to the Sheriff of Russell County. (Tr. pp. 105, 107.) Form V, "Request for Temporary Custody" is signed by M. L. Murphy, Sheriff of Russell County, and James H. Caldwell, Circuit Judge, and is dated June 8, 1977. Form V also bears the notation that the original was returned on June 9, 1977. (Tr. p. 102.)
April 27, 1978, Alabama's Uniform Mandatory Disposition of Detainers Act, §§ 15-9-80 through 15-9-88, Code of Alabama 1975, became effective.
May 30, 1978: Russell County District Attorney attempted to gain custody of appellant pursuant to a governor's side agreement.
October, 1978: Georgia officials telephoned Russell County officials to inform them that Georgia was no longer honoring the governor's side agreement. (Tr. pp. 13, 14.)
October 2, 1978: Agreement on Detainers Form V, Request for Temporary Custody filed with Georgia authorities.
October 17, 1978: Appellant again returned Agreement Detainer forms, including a request for disposition of indictments, Form II.
January 25, 1979: Appellant was returned to Alabama.
January 29, 1979: Appellant applied for treatment as a youthful offender.
February 9, 1979: Appellant was denied youthful offender status. Appellant was arraigned, pleaded not guilty and moved to quash the indictment on grounds of denial of a speedy trial.
February 22, 1979: Argument was heard on the motion to quash the indictment. Appellant was tried for robbery, convicted and sentenced.
March 5, 1979: Appellant was tried for assault with intent to murder and convicted.
March 8, 1979: Appellant was sentenced to twenty years imprisonment.

II
Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), established a set of four factors to be considered by the courts in all cases in which a denial of the right to a speedy trial is claimed to have occurred.
In Barker v. Wingo, supra, the United States Supreme Court ruled that in weighing the conduct of the State and the accused, courts are to consider: (1) the length of the delay, (2) the accused's assertion of his right, (3) the reason for the delay, and (4) prejudice to the accused. Thus, our discussion of appellant's claim will be organized around these four factors.
1. Length of Delay.
The Speedy Trial Clause of the Sixth Amendment extends its protection to a person who has been "accused" in the course of a criminal prosecution. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Clearly, one way a *1177 person becomes an "accused" in a criminal prosecution, is when an indictment is returned against him or her. Mayberry v. State, 51 Ala.App. 343, 285 So.2d 507 (1972), cert. denied 291 Ala. 792, 285 So.2d 512 (1973), cert. denied 415 U.S. 929, 94 S.Ct. 1438, 39 L.Ed.2d 486 (1974).
Thus, in the present case, on January 11, 1977, when appellant was indicted for assault with intent to murder, his right to a speedy trial attached. From the record it appears that the district attorney of Russell County made no attempt, whatever, to bring appellant to trial until May, 1978, some fifteen months after indictment. Moreover, the first attempt to bring appellant to trial was unsuccessful because the district attorney's office apparently knew nothing of the existence of Alabama's Uniform Mandatory Disposition of Detainers Act until October, 1978, some six months after the effective date of the Act.
After the proper procedures were followed, appellant was finally returned to Alabama and stood trial for assault with intent to murder on March 5, 1979, twenty-five months after indictment. As we said in Prince v. State, Ala.Cr.App., 354 So.2d 1186 (1977), cert. den. Ala., 354 So.2d 1193 (1978):
"In our judgment, this delay is excessive, particularly in view of the fact that appellant's. . . offense was by no means complex, but was most akin to `an ordinary street crime.' Barker v. Wingo, supra. At the very least, the delay is long enough to `trigger' an inquiry into the other Barker factors." Id. at 1190.
2. Accused's Assertion of His Right.

"[T]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker v. Wingo, supra, 407 U.S. at pp. 531, 532, 92 S.Ct. at pp. 2192-2193.
As noted earlier, sometime between May 31, 1977, and June 8, 1977, appellant had caused to be delivered to Russell County officials certain forms requesting disposition of the indictments pending against him. Form II, appearing in the record as defense Exhibit No. 1 provided in pertinent part as follows:
 
 "INMATE'S NOTICE OF PLACE OF IMPRISONMENT
 AND REQUEST FOR DISPOSITION OF INDICTMENTS,
 INFORMATION OR COMPLAINTS
 "TO: M. Lamar Murphy, Sheriff, Prosecuting Officer
 Phenix City, Ala.
 (jurisdiction)
 Russell County, Court Hpenix [sic] City, Ala.
 (jurisdiction)
"And to all other prosecuting officers and courts of jurisdictions listed below from which indictments, informations or complaints are pending.
"You are hereby notified that the undersigned is now imprisoned in
"Montgomery Corr. Inst. at Mount Vernon, Ga.
 (institution) (town and state)
"and I hereby request that a final disposition be made of the following indictments, informations or complaints now pending against me:
[Blank]
"Failure to take action in accordance with the Agreement on Detainers, to which your state is committed by law will result in the invalidation of the indictments, informations or complaints.
"I hereby agree that this request will operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against me from your state. I also agree that this request shall be deemed to be my waiver of extradition with respect to any charge or proceeding contemplated hereby or included herein, and a waiver of extradition to your state to serve any sentence there imposed upon me, after completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the Agreement on Detainers and a further consent voluntarily to be returned to the institution in which I now am confined.
"Dated: May 31, 1977 /s/ Anthony L. Turner."
Form V provided in pertinent part as follows:

*1178 "REQUEST FOR TEMPORARY CUSTODY

"TO: Charles R. Balkcom, Warden Montgomery C.I.
 (Warden-Superintendent-Director) (Institution)
 P. O. Box 256, Mount Vernon, Georgia
 (Address)
"Please be advised that Anthony L. Turner, who is presently an inmate at your institution, is under (indictment) (information) (complaint) in the
Russell County, Phenix City, Ala. of which I am the
 (jurisdiction)
Sheriff
(title of prosecuting officer)
Said inmate is therein charged with the (offense) (offenses) enumerated below:

"OFFENSE
"Robbery & Assault with Intent to Murder
"I propose to bring this person to trial on this (indictment) (information) (complaint) within the time specified in Article IV(c) of the Agreement.
"In order that proceedings in this matter may be properly had, I hereby request temporary custody of such person pursuant to Article IV(a) of the Agreement on Detainer.
"I hereby agree that immediately after trial is completed in this jurisdiction I will return the prisoner directly to you or allow any jurisdiction you have designated to take temporary custody. I agree also to complete Form IX, the Notice of Disposition of a Detainer, immediately after trial.
 "Signed M. L. Murphy
 "Title Sheriff
"I hereby certify that the person whose signature appears above is an appropriate officer within the meaning of Article IV(a) and that the facts recited in this request for temporary custody are correct and that having duly recorded said request. . . hereby transmit it for action in accordance with its terms and the provisions of the Agreement on Detainers.
"DATED: June 8, 1977 Signed James H. Caldwell
 (Circuit Judge) "
We find that, these documents taken together, were sufficient to place the prosecuting authorities "on notice" of appellant's speedy trial claim.
"It would seem unduly harsh to require that an unsophisticated accused, proceeding pro se, invoke the talismanic phrase `speedy trial' before he can claim to have asserted his right. Especially is this so when the prosecution continues at all time to bear the responsibility for securing a prompt trial." Prince v. State, supra,
at p. 1191, quoting from Prince v. Alabama, 507 F.2d 693, 704 (5th Cir. 1975).
3. Reasons for Delay.
The delay between appellant's indictment and trial can only be attributed to Russell County officials. As noted earlier, the officer in charge of extraditing prisoners from other states for the district attorney's office, Thomas Boswell, testified that his office knew of appellant's incarceration in Georgia "[w]hen the original case was made in '77." (Tr. p. 10). Russell County officials also knew that appellant had been convicted of armed robbery and murder in Georgia and had been sentenced to life imprisonment. See Form III (Defendant's Exhibit No. 1).
Obviously, the district attorney of Russell County knew that appellant had been indicted in January of 1977, yet no action whatever was taken to bring appellant to trial until May of 1978, and no explanation for this delay appears in the record. The transcript discloses that a request for custody was made in May of 1978, using a governor's side agreement, an agreement which the district attorney should have known was obsolete.
Thus, because of the actions and inaction of the Russell County officials, appellant's trial was delayed more than twenty-five months. Article I, § 6, of the Alabama Constitution and the Sixth Amendment to the United States Constitution, will not sanction such prosecutorial conduct.
*1179 4. Prejudice to the Accused.
The record is silent with regards to whether appellant was prejudiced by the excessive delay in bringing him to trial.
"[H]owever, there is authority which holds that where the other three Barker factors weigh in favor of the accused, `prejudiceeither actual or presumed becomes totally irrelevant.'" Prince v. State, supra, p. 1192, quoting Hoskins v. Wainright, 485 F.2d 1186, 1192 (5th Cir. 1973).
See also, Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).
After carefully weighing all the Barker factors in light of the conduct of both the appellant and the prosecution, we conclude that appellant's constitutional right to a speedy trial was violated by the unnecessary and excessive delay in bringing him to trial as aforesaid.
In accordance with Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), we must reverse and render this cause.
REVERSED AND RENDERED.
BOOKOUT, J., concurs.
DeCARLO and BOWEN, JJ., concur in result.
HARRIS, P. J., dissents.

ON REHEARING
TYSON, Judge.
In support of its application for rehearing the appellee relies on the case of Hopson v. State, Ala., 352 So.2d 506 (1977). In that case, the Alabama Supreme Court held that the defendant was not denied his constitutional right to a speedy trial where the length of delay from indictment to trial was five years.
The present case, however, differs from Hopson, supra, in several significant respects. In Hopson, the defendant did not request a speedy trial until more than two years had elapsed after indictment. In the present case, Turner requested disposition of all untried indictments four months after indictment.
In the former case, the State's efforts to extradite Hopson were unsuccessful because of the almost total lack of cooperation of the Governor of New York. In the instant case, Georgia authorities acted promptly to return Anthony Turner when Alabama officials proceeded according to the provisions of the Uniform Mandatory Disposition of Detainers Act, an act of which both states were parties.
Most importantly, even before indictment and before Hopson requested a speedy trial the District Attorney of Calhoun County (in Hopson) made continuing good faith efforts to have Hopson returned to Alabama to stand trial.
In the present case, in spite of knowing of appellant's whereabouts, the district attorney's office in Russell County made no effort to have appellant returned to Alabama to stand trial until some sixteen months after indictment, and a full year after appellant's request for disposition of indictments. An additional five month delay is attributable to the failure of the district attorney's office to follow proper procedures in having appellant returned. In its brief the appellee makes the statement:
"[t]he delay from May to October [1978] was occasioned by the negligence of Georgia authorities and should not result in prejudice to the State of Alabama." [Brief p. 2].
We need only observe that it is not the duty of Georgia authorities to notify Alabama authorities of changes in applicable Alabama law. The testimony of Thomas Boswell, Chief Investigator for the Russell County District Attorney's Office, in part is as follows: (R. pp. 10-16).
"Q. Would you go back, please, and tell us what you have done in this case with regards to bringing Mr. Turner to trial?
"A. Yes, sir. When the original case was made in '77, we had knowledge that he was in jail in Georgia and we were not a party to the agreement on detainers between Alabama and Georgia. When *1180 the Alabama Legislature enacted on the agreement and we became a party to it along in April or May of '78, the machinery was not exactly organized. We were just getting into that part of it and so we weren't sure on exactly how to do it. So, we filed a set of extradition papers with a Governor's side agreement in May of '78. Georgia then wrote us a letter advising us that since we were a party to the agreement in May of '78
"Q. Excuse me, do you have a copy of the correspondence relative to the Governor's order and side agreement?
"A. Yes, I do.
"MR. BENTON: Could we have those marked State's Exhibit Number One?
"(Whereupon, a letter from B. Benton to Gov. Wallace, dated May 30, 1978, was marked for identification as State's Exhibit One.)
"A. This is a copy of all the documents we filed in May of '78 to get him brought back here. It is an application for extradition and attached to it is the request for the Governor's side agreement.
"MR. MORGAN: Your Honor, we have no objection to the introduction of these.
"THE COURT: All right, and you can substitute copies for them.
"MR. BENTON: We move at this time to introduce State's Exhibit Number One.
"THE COURT: That will be admitted without objection.
"(Whereupon, the letter having been previously marked for identification as State's Exhibit One was received into evidence without objection.)
"BY MR. BENTON: (continuing)
"Q. All right, continue on. You stated that you sent a request through the Governor's Office to the Governor of the State of Georgia with a side agreement?
"A. Yes, sir, on June 28.
"Q. Excuse me, just for the record, what is a side agreement?
"A. It is an agreement between the Governor of the State of Alabama and the Governor of the State of Georgia to allow us to take possession of a prisoner for the purpose of a trial and at the end of the trial to return him to the State that loaned him to us to finish out his sentence in the first state.
"Q. In other words, if they would agree to it, we would go to Georgia to get the defendant and bring him over here to try him and once that happens, take him back to finish serving his time in Georgia?
"A. Yes, sir.
"Q. What happened then?
"A. On June 28, 1978, we received a letter, a copy of a letter from Governor Wallace to Governor Busbee requesting that these papers go on through including the Governor's side agreement and also that we be notified when Anthony Turner was available for us to take possession of him.
"MR. BENTON: I ask that this letter be marked State's Exhibit Number Two.
"(Whereupon, a letter from C. Reding to Gov. Busbee, dated June 28, 1978, was marked for identification as State's Exhibit Two.)
"MR. MORGAN: No objection, Your Honor.
"MR. BENTON: The State moves to introduce State's Exhibit Number Two with leave to withdraw it and file a copy thereof.
"THE COURT: All right, let it be done.
"(Whereupon, the letter having been previously marked for identification as State's Exhibit Two was received into evidence without objection.)
"Q. All right. What did you do next?
"A. We did not have any further correspondence with Georgia until on October 2, we initiated under the Uniform Detainers Act that we were now a party to a request for temporary custody which would be form 5.
"MR. BENTON: I will ask that form 5 be marked as State's Exhibit Number Three.

*1181 "(Whereupon, an agreement on detainer: form 5 was marked for identification as State's Exhibit Three.)
"MR. MORGAN: No objection, Your Honor.
"THE COURT: Let it be admitted.
"(Whereupon, the agreement on detainer having been previously marked for identification as State's Exhibit Three was received into evidence without objection.)
"MR. BENTON: Judge, we have a continuing request on all of these exhibits to withdraw and file copies.
"THE COURT: That is my understanding.
"Q. Now, what was the date that you filed State's Exhibit Number Three?
"A. October 2, 1978.
"Q. All right, sir. And accompanying that was there an order signed by the Court?
"A. Yes, sir. Attached to the bottom of form five, a standard form, where the Court endorsed the request of temporary custody.
"Q. And that was the Hon. Paul J. Miller, Jr., Presiding Judge?
"A. Yes, sir.
"Q. You say we initiated form five; that was done by our office?
"A. Yes, sir. I don't have a note in the file but it is from my memory that Georgia telephoned us and requested that we not use the executive agreementI mean the executive side agreement any more since we are now a party to the detainers and requested that we start over again. So, we did. We sent them form five.
"Q. State's Exhibit Number Three was initiating the process after the phone call?
"A. Yes.
"Q. Now, on the record keeping aspect, would any of the copies of this correspondence be routinely sent to the Sheriff's Office during your negotiation with another state?
"A. No, sir.
"Q. All right, sir.
"A. Then on October 10, we received from Georgia forms three and four which is a certificate of inmate status and four is the offer to deliver temporary custody. They also had attached to this form one and two, which is a form that is signed by the inmate, Anthony Turner, and the date of the signing of one and twolet me correct that. It was on October 26th that we received one through four, which are the forms that are signed by the inmate and they were signed on 10-17-78.
"MR. BENTON: I ask that this packet of papers be marked State's Exhibit Number Four consisting of seven pages.
"(Whereupon, the forms consisting of seven pages were marked for identification as State's Exhibit Four.)
"MR. MORGAN: No objection.
"THE COURT: Let them be admitted without objection.
"(Whereupon, the seven pages having been previously marked for identification as State's Exhibit Four were received into evidence without objection.)
"Q. All right, sir, what did you do then?
"A. Once this paper work is in, the next procedure is to file form six, which is `Evidence of Agents Authority to Act for Receiving State,' which is actually the paper you get to go get them and we filed that on October 30, 1978, and we received it endorsed by the Governor's Office on November 15, 1978."
The Russell County district attorney's conduct in this case does not amount to the "diligent, good-faith effort" which was mandated by Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), upheld in Prince v. State, 507 F.2d 693 (1975), and present in Hopson v. State, supra.
OPINION EXTENDED: APPLICATION OVERRULED.
DeCARLO, BOOKOUT and BOWEN, JJ., concur.
HARRIS, P. J., dissents.
NOTES
[1] This appeal is a companion case to a robbery conviction now pending on appeal as Turner v. State, 4 Div. 735.
[2] Appellant was convicted of robbery and murder in Georgia in 1976.